# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADMI INC, TARSIN MOBILE INC., by their CEO, JOSEPH R. CELLURA and JOSEPH R. CELLURA, Individually,<br><br>Plaintiffs,<br><br>VS.<br><br>ALLEN D. MOYER and ADMI INCORPORATED,<br><br>Defendants. | Case No.: Number:<br><br>**Civil Complaint for Violations:**<br>1) Intentional Interference with Prospective Business Advantage.<br>2) Defamation Per Se.<br>3) Intentional Infliction of Emotional Distress<br>4) Injunctive Relief'<br><br>**JURY TRIAL DEMANDED** |

**COMES NOW** Plaintiffs ADMI Inc., Tarsin Mobile Inc., and Joseph R. Cellura by and through their counsel of record as and for their claims in a Complaint against, Allen D. Moyer and ADMI Incorporated, hereby alleging as follows:

## I.
## Jurisdiction and Venue

1. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1332 in the complete diversity of citizenship exists among the parties with the amount in controversy exceeding the sum of $75,000.00.

2. Venue in this District is proper under 28 U.S.C. § 1391(b) and (c) in that Plaintiff's businesses is located within the Southern District of New York, where material events giving rise to this claim and the Plaintiffs contractual rights arise are within the boundaries of this Court.

## II
## Supplemental Jurisdiction

3. Plaintiff further invokes this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367, over all state law claims and as against all parties that are so related to claims in this action and within the original jurisdiction of this Court that they form part of the same case or controversy.

## III.
## The Parties

**Plaintiffs:**

4. ADMI Inc., (ADMI-NV) was formed, and incorporated in the State of Nevada and is doing business at 104 Charlton St. 1E Front, New York New York 10014.

5. Tarin Mobile Inc., ("TMIX") was/is a publicly traded company formed and incorporated in the State of Florida and is doing business at its principal place of business located at 5345 Kietzke Lane, Reno, Nevada 89511.

6. Joseph R. Cellura, ("Cellura") is a citizen and resident of the State of Nevada was and is the CEO and director and officer of TMIX and ADMI-NV with offices located at 5345 Kietzke Lane, Reno, Nevada 89511.

**Defendants:**

7. ADMI Incorporated ("ADMI-CA") was formed and incorporated in the State of California and is doing business with it principal place of business located at 18525 Sutter Boulevard, Suite 290 Morgan Hill, CA 95037.

8. Allen D. Moyer ("Moyer") is a citizen and resident of the State of California was and is a director and officer of ADMI-CA with offices located at 18525 Sutter Boulevard, Suite 290 Morgan Hill, CA 95037.

## IV.
## Introduction

9. Plaintiffs ADMI-NV and TMIX, by Plaintiff CEO Joseph R, Cellura and Joseph R. Cellura individually bring this action on behalf of the Companies, concerning their business activities and partners nationwide. ADMI-NV is under contact and holds or has an exclusive use of a Brand "Licensing Agreement" entered into in New York State New York among it and its "Strategic Partner" a brand management company headquartered in New York City.

10. TMIX is a sublicense to the ADMI-NV License Agreement. The License Agreement provides a right to use a major branded name in the hotel and hospitality industry. The Brand and its use have a projected value of at least One Hundred Million ($100,000,000) Dollars.

11. This action challenges Defendant Allen D. Moyer's ("Moyer") past wrongful acts of Intentional Interference with Prospective Economic Advantage, in violation of the law concerning his false claims that customers of ADMI-NV and TMIX are required to use his and ADMI-CA's services under the Plaintiffs' ADMI-NV and TMIX Licensing Agreement with their New York Strategic Partner and other business partners.

12. The collective Plaintiffs seek immediate injunctive relief, a temporary restraining order which is necessary to prevent irreparable harm together with a hearing concerning their right to a preliminary injunction addressing the Defendant Moyer's past unlawful acts and to stop his present and continuing threats to injure the Companies and CEO Cellura in their names-reputations and standing in New York among them, their Strategic Partner and other business partners.

## V.
## Facts

13. ADMI-NV-TMIX, through their wholly owned subsidiaries, in cooperation with multiple business entities and individuals is a management services partnership designed to generate income-fees applying a proprietary coordinated booking management platform for hotel guests under themed hotel attractions fixed to strategic destinations World-wide.

14. Defendant Moyer is an architect by training. He claims to be an international commercial real estate development executive, with substantial and successful experience in concept ideation; design; construction; and delivery of experiential spaces, and **"the owner"** of a vast network of globally recognized resources in the entertainment, retail, and hospitality sectors.

15. In or about June 2016 Defendant Moyer was introduced to TMIX wherein they engaged in discussions hoping to find common means for hotel and resort development.

16. TMIX offered Defendant Moyer an opportunity to promote his services as an outside consult to its partners and future partners where he could bid his architecture and management services on various projects against other bidders in the market.

17. Defendant Moyer agreed to offer his services and act as an outside consultant for the Company's projects subject to a business partners exclusive right of approval for which he would generate proposed project design; construction; and delivery of experiential spaces as a consultant through ADMI-CA providing independent services billing invoices.

18. Defendant Moyer agreed-provided his services and authorized the use of his bio-imagery and photo display of his previous projects, doing so intending to promote his services as an independent contractor and consultant through ADMI-CA allowing him to offer his and ADMI-CA's consulting services to TMIX's existing partners and its future partners.

19. For the use of his biography, his projects and images Moyer was paid more than $200,000 in consideration of the express right to use his bio-imagery and photo display of his previous projects including their inclusion in the TMIX business plan and decks promoting his services as an outside consultant and team member.

20. Defendant Moyer agreed to provided outside-independent consulting services for any of the TMIX-ADMI-NV projects if a partner or client chose to use his services.

21. Defendant Moyer knew and was aware the ultimate decision to use his services was to be decided by the existing and future partners for each individual-particular project.

**Moyer Disclosure of his Financial & IRS Problems**

22. After Defendant Moyer approved, agreed, and authorized the use of his bio-imagery and photo display of his previous projects; after he received Plaintiffs advance payment

CIVIL COMPLAINT
Exhibit "A"

of $200,000, in or about 2017 Moyer approached CEO Cellura and requested a bailout for his personal and business debts for ADMI-CA, The debts including impending obligations concerning outstanding taxes and penalties imposed by the US Internal Revenue Service.

23. Defendant Moyer's disclosure of his financial and IRS problems to TMIX resulted in TMIX being forced to provide funding, financial resources, and support to bail Moyer out of his working capital deficiencies.

24. The matter was so serious, that through their established banking partners, TMIX, because Moyer had been referred to as a consultant on several projects, the Company was forced to continue use of his services and forced to aid him in securing a One Million ($1,000,000) Dollar up to Five Million $5,000,000 Dollars line of credit.

25. Plaintiffs are informed and believe, Defendant Moyer withdrew over Two Million ($2,000,000) Dollars and then defaulted on the arranged credit line wherein TMIX's prior good relationship with its banking partners has now been permanently disrupted.

26. In 2021, Defendant Moyer told Plaintiff Cellura he was correcting the credit line default and that he was seeking referrals for his services.

27. Plaintiff Cellura told Defendant Moyer he would change the name of a wholly owned subsidiary One Day Relief a company formed in Nevada to ADMI Inc. wherein file Defendant Moyer needed to provided a right to use his bio and imagery as an outside consultant and team member.

28. Defendant Moyer agreed and provided ADMI-NV his bio and imagery for consideration of outside consulting to him and ADMI-CA.

29. TMIX began an internal audit of Defendant Moyer's past invoices and determined Moyer has billed or attempted to bill its clients millions of dollars in padded-unearned consulting fees.

30. A further investigation revealed that Defendant Moyer was attempted to illegally solicit funds from TMIX partners and potential partners claiming an exclusive right to acts a consultant under the ADMI-NV Licensing Agreement which he falsely claims is controlled-owned by him, claiming that Plaintiffs-Cellura have stolen his bio and imagery and are illegally using them without his permission of consent.

29. To reduce exposure to its partners and future partners the Company scaled back its use and introduction of the Defendant Moyer and ADMI-CA to any new projects or partners and otherwise refused to engage his or ADMI-CA's services.

**Moyer's Wrongful Attempt to Force ADMI-Nevada Partners to Make Payments to Him Based on a False Threat to Negatively Influence the Outcome of a Partner's Project.**

30. Since his credit line default, and the Companies scale back, Defendant Moyer has been, and is desperately motivated to find money anywhere he can. He has now turned to false statement, intimidation, and extortion, intentionally interfering in Plaintiffs relationships and threatening he will destroy or otherwise interrupt TMIX and ADMI-NV's, relationships with its New York Strategic Partner and other business partners falsely claiming he and ADMI-CA own the Licensing Agreement. He is obviously motived and desperate to stave off creditors.

31. On or about August 2022, Defendant Moyer who was in California telephoned Cellura who was in Nevada frantically demanded $76,000 in payment and other benefits from ADMI-NV for his admission that he had working capital deficiencies related to completing ADMI-CA's consulting obligations and that he would seek funds directly from Plaintiffs Strategic New York Partner, falsely claiming he and ADMI-CA owned-controlled the ADMI-NV License Agreement and that Cellura stole his bio and imagery and photos.

32. Plaintiffs TMIX and ADMI-NV and Cellura were fearful or his interrupting their Licensing Agreement with their Strategic Partner in New York and were forced to make a payment of $5,000 to him or suffer the consequences of his false claims and threats to seek money from them.

33. Beyond these threats Defendant Moyer has attempted to secretly obtain money from TMIX and ADMI-NV partners where he is not a consultant, threatening to negatively influence the outcome of their projects and their relationship with the Plaintiff Companies and Strategic Partners.

34. On or about September 12, 2022, Defendant Moyer who was in California attempted to plunder fees using a ADMI-NV relationship the Company had Peter Aaron Maharaja who was in Hawaii.

35. Having no other way to get money Defendant Moyer sent an e-mail to Mr. Maharaja requesting a telephone conference:

> As we discussed last week, Joe is currently in Hawaii, I am aware he is there with several of the ▮▮▮▮ Executives. I would encourage you that due to the issues you and Joe have both acknowledged that you not only sign the ADMI Agreement and fund the engagement fee, that you respond the Draft MOU (attached) request a meeting immediately to review and agree to terms. My fear is that after Friday the ▮ option will no longer be available to you.
>
> Please call me as soon as your time permits, thank you!
>
> \* \* \* \*

CIVIL COMPLAINT
Exhibit "A"

36. Defendant Moyer was seeking advance payment concerning the Hawaii- Maharaja ADMI-NV and Strategic Partner project. Based on the email Mr. Maharaja agreed to a conversation with Moyer.

37. During a 1 hour and 30-minute telephone conversation among Defendant Moyer, who was in California, Mr. Maharaja, who was in Hawaii, Moyer made a demand for payment of Five Hundred Thousand ($500,000) Dollars making numerous false and misleading statements concerning the ownership of TMIX and ADMI-NV contracts and their projects development with their New York Strategic Partner.

38. Although he knew them to be false and intending to disrupt or otherwise interfere in the ADMI-NV Strategic Partners and their potential economic interest with Mr. Maharaja, Defendant Moyer told Mr. Maharaja that the potential contracts relied on by him concerning the Brand names and use to be provided under the Licensing Agreement relating to his projects did not belong to TMIX or ADMI-NV, but were the property of his company ADMI-CA; that ADMI-NV had the right to use his bio, imagery or photos of his prior projects and that CEO Cellura stole them, the Company was using them without his permission or consent.

39. These statements were made under circumstances where the Defendant Moyer intended a cash grab. The demand was directed at Mr. Maharaja presenting him with a lost opportunity with ADMI-CA under the Licensing Agreement if he did not comply with his demands. Under the circumstances Defendant Moyer was acting solely out of malice, in a dishonest and unfair manner, or improper means causing interference and injury to the relationship among Plaintiff's and Maharaja.

40. Defendant Moyer never had authority to engage in conduct implying any power to decide the outcome of the TMIX-ADMI-NV., projects and the use of its Licensing

Agreement. It is apparent, that the statements made by him on September 12, 2022 in both his e-mail and during the telephone conversation were an improper and unauthorized attempt to interfere in Plaintiffs contract by create a false appearance of authority and power related to ADMI-NV business partners including TMIX by placing Plaintiffs in a false and misleading light, a manipulative designed to force-induce the execution of an agreement among him and Mr. Maharaja while attempting to injure Plaintiffs in their property and business reputations.

41. By reason of the forgoing Maharaja has refused to perform with ADMI-NV TMIX for fear Plaintiffs do not have ownership and use of the License Agreement as claimed.

42. On or about October 8, 2022, Moyer received a letter advising him to cease and desist his false claims of ownership to Plaintiffs License Agreement and attempt to obtain funds from ADMI-NV and TMIX or from their business relationship with Mr. Maharaja.

43. That despite the letter to cease and desist his unlawful acts, Defendant Moyer has by intimidation-extortion threatened the Plaintiff ADMI-NV to approach its New York Strategic Partners and other third parties, threatening to issue false and misleading disparaging comments to about Plaintiff Cellura of ADMI-NV, TMIX concerning false claims of theft concerning his bio and imagery and the ownership of their License Agreement.

44. After receiving the Plaintiff's cease-and-desist letter, on or about September 21, 2022, without a lawful right to do so in an attempt to coerce and interfere in their business relationships intending to extort money and valuable property from Plaintiffzs, the Defendant Moyer, over the telephone demanded from an ADMI-NV and TMIX Board member and director that unless he received an equity stake similar to the top four executive of these Companies; that unless Plaintiffs made an immediate substantial payment to him of between Eight Million ($8,000,000) Dollars and Fourteen Million ($14,000.000) Dollars, he would

destroy the ADMI-NV business relations with its Strategic Partner in New York City; wherein Defendant Moyer threatened to communicate directly with Plaintiff's New York Strategic Partners through key director and officer relationships, falsely claiming the ADMI-NV and TMIX's License Agreement was his under the authority of ADMI-CA and that Plaintiffs were illegally using his bio-imagery and prior projects without his consent; that he never authorized, their use they were" stolen" by Plaintiff Cellura: that he would bankrupt TMIX and ADMI-NV and otherwise destroy their License Agreement with their Strategic Partner through protracted litigation, whether his claims were true or not; that he would have his attorneys "destroy" all of the work and projects that had been done with both ADMI-NV and TMIX in building future relationship on the hotel and hospitality industry.

45. After receiving the Cease-and-Desist letter on or about October 27, 2022, without a lawful right to do so, in an attempt to interfere in Plaintiffs' economic and business opportunities, extort money and valuable property from Plaintiffs, in furtherance of his wrongful acts Defendant Moyer over the telephone from California to an ADMI-NV director and officer setting a deadline demanding the payments and property as set forth above or suffer the consequences of what he will do in the future concerning Plaintiffs and their Strategic Partners in New York.

### Count 1
### (Intentional Interference with Prospective Economic Advantage)

46. Plaintiffs incorporate by reference paragraphs **1** through **45** inclusive, as though fully set forth herein.

47. There was an existing economic relationship between Plaintiffs and other third parties with the probability of future economic benefit to Plaintiffs and their New York Strategic Partners.

48. The Defendant Moyer knew and was aware of the relationships.

49. The Defendant Moyer took direct steps in promoting fear, delay, obstructing-interfering in Plaintiffs relationships inducing Maharaja to avoid a contract with ADMI-NV and TMOX concerning Plaintiff Licensing Agreement among them, their Strategic Partners by wrongfully demanding claiming ADMI-NV and TMIX's License Agreement was his under the authority of ADMI-CA and that Plaintiffs were using his bio-imagery and prior projects without his consent; he never authorized, their use they were stolen by Plaintiff Cellura..

50. Plaintiffs contractual-business relationships were disrupted-impaired and otherwise delayed in their performance.

51. By reason of the above Defendant wrongfully interfered with Plaintiff existing economic relationship among them, their Strategic Partners in New York and other third parties by intentionally and wrongfully using fear (the false claims of ownership of the License Agreement and demand consulting fees of $500,000 from its business partners-receiving cash payments from Plaintiffs) intending to wrongfully induce Maharaja into and agreement with him and AMDI-CA, and forgo an agreement with ADMI-NV and TMIX But for the Defendant's intentional acts-false statements, his false claims of ownership in the Brand License Agreement, and his false claims that Plaintiff Cellura stole his bio-imagery Maharaja would have entered a contract relationship with the Plaintiffs and its New York Partners and Plaintiff would not have made payments to him.

52. The conduct – as described above – was independently wrongful, existing as wrongful acts, as the law prohibits and was committed for a wrongful, purpose by wrongful means causing fear and disruption-harm in the Plaintiffs economic and business relationships as it had in the past, and was certain or substantially certain to occur in the future, such that, under the circumstances.

53. Defendant Moyer was as acting solely out of malice, in a dishonest and unfair manner, or improper means causing interference and injury to the relationship among Plaintiff's and Maharaja.

54. Plaintiffs suffered economic harm proximately caused by the Defendant's wrongful acts whereby in addition to compensable damages Plaintiffs are entitled to punitive damages.

**Count II**
**(Defamations Per Se)**

55. Plaintiffs incorporate by reference paragraphs **1** through **54** inclusive, as though fully set forth herein.

56. Plaintiff is informed and believes, and therefore alleges, that Defendant, recklessly and intentionally caused the false publications of defamation, of and concerning Plaintiff, Cellura to third persons.

57. These false and defamatory statements included express and implied accusations that Plaintiff Cellura was acting criminally; that he stole Defendant's bio, imagery photos of his prior projects and that ADMI-NV., TMIX were using them without his permission or consent.

58. These statements were defamatory per se insofar as they related to Plaintiff's profession and trade and honesty, consisting of oral, knowingly false and unprivileged communications, tending directly to injure Plaintiff Cellura in his personal, business and professional reputation.

59. These statements were false and were understood as assertions of fact, and not as opinion. Each of the statements were false and defamatory per se (as set forth above) were negligently, recklessly, and intentionally made and published in a manner equaling malice and abuse without privilege, with hatred, ill will, and an intent to vex, harass, annoy, and injure Plaintiff Cellura, wherein Defendant Moyer intended to cause damage to Cellura's professional and personal reputation, for the purpose of causing third parties to terminate their relationships with TMIX and ADMI-NV.

60. That Moyers conduct was a substantial factor in causing the harm. Plaintiffs suffered economic harm proximately caused by the Defendant's wrongful acts whereby in addition to compensable damages.

61. For the reason the acts and words spoken were taken toward Plaintiff Cellura were carried out in a deliberate, callous and intentional manner intending to injure and damage Plaintiff, he is entitled to recover punitive damages from Defendants in an amount according to proof

## Count III.
### (Intentional Infliction of Emotional Distress)

62. Plaintiffs incorporate by reference paragraphs **1** through **61** inclusive, as though fully set forth herein.

63. Defendant Moyer has engaged in the extreme and outrageous conduct herein above alleged with wanton and reckless disregard of the probability of causing Plainiff Cellura to suffer severe emotional distress.

64. Defendant Moyers acts established a proximate result of the extreme and outrageous conduct engaged in by him, Plaintiff Cellura suffered humiliation, mental anguish and extreme emotional and physical distress all to his general damage in an amount according to proof at trial.

65. Defendant Moyer's conduct as herein alleged was malicious and oppressive in that it was conduct carried on by Defendant in a willful and conscious disregard of Plaintiff's rights and subjected him to cruel and unjust hardship.

66. That Defendant Moyers conduct was a substantial factor in causing the harm. Plaintiff suffered economic harm proximately caused by the Defendant's Moyers wrongful acts whereby in addition to compensable damages.

67. For the reason the acts taken toward Plaintiff Cellura were carried out in a deliberate, callous and intentional manner intending to injure and damage Plaintiff, he is entitled to recover punitive damages from Defendants in an amount according to proof.

### Count IV.
### (Injunctive Relief )

68. Plaintiffs incorporate by reference paragraphs **1** through **67** inclusive, as though fully set forth herein.

69. Defendant Moyer's threats, his past acts of interference and extortion have no nexus to a plausible claim of right wherein Plaintiffs have the right to injunctive relief to avoid irreparable harm.

**DEMAND FOR JURY TRIAL** Plaintiffs hereby demands a trial by jury on all issues so triable of right.

**WHEREFORE,** by reason of the foregoing, Plaintiffs pray for relief as follows:

1. Enjoining Defendant from conducting its business through the wrongful acts and practices described in this Complaint;

2. Requiring Defendant to disgorge its ill-gotten gains, as appropriate;

3. Awarding restitution, as appropriate;

4. Awarding pre- and post-judgment interest;

5. Damages suffered as a result of Defendant acts, in an amount to be determined at trial and punitive damages;

6. Awarding Plaintiffs all costs and expenses, including attorneys' fees,

7. Granting such other and further relief as this Court may deem necessary, proper, and/or appropriate.

Dated: October 31, 2022

CIVIL COMPLAINT
Exhibit "A"

        *Douglas R. Dollinger, Esq.*
Douglas R. Dollinger, Esq. NYS Bar Code 2354926
Law Offices of Douglas R. Dollinger, PC
570 County Rt 49
Middletown, New York 10940
Phone | 845.741.9363
Email ddollingeresq@gmial.com
Attorney for Plaintiffs

CIVIL COMPLAINT
Exhibit "A"