UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADMI INC, TARSIN MOBILE INC., by their CEO, JOSEPH R. CELLURA and JOSEPH R. CELLURA, Individually,<br>Plaintiffs,<br><br>Vs.<br><br>ALLEN D. MOYER and ADMI INCORPORATED,<br>Defendants. | Case No.: Number:22-cv-9339<br><br>**Declaration of Joseph R. Cellura in Support of the Motion for a Temporary Restraining Order and Hearing for Preliminary Injunction** |

Pursuant to 28 U.S.C.§ 1746, Plaintiff Joseph R. Cellura hereby declares as follows:

**1.** I am a Director and Chief Executive Officer of ADMI Inc, ("ADMI-NV") and Director and Chief Executive Officer of Tarsin Mobile Inc., ("TMIX"). This declaration is made in support of a request for a temporary restraining order and request for a hearing for entry of a preliminary injunction prohibiting the Defendant Allen Moyer ("Moyer") and his company ADMI Incorporated ("ADMI-CA") from intentionally interfering in the Companies prospective business advantage, including an attack designed to destroy our business reputations through false statements which are defamatory per se.

**2.** Since late 2021, ADMI-NV and TMIX hold a branded "Licensing Agreement" entered in the State New York. The License Agreement exists among them and their "Strategic Partner" a major brand management company headquartered in New York City. The License Agreement provides a right to use a branded name in the hotel and hospitality industry. The Brand and its use have a projected value of at least One Hundred Million ($100,000,000) Dollars.

**3.** Through the Companies wholly owned subsidiaries and affiliates, in cooperation with multiple business entities and individuals ADMI-NV and TMIX are in the midst of a design build and filings with the Securities and Exchange Commission to become compliant for public trading.

Exhibit "B"

4.      Our business model provides services surrounding construction of hotels under the License Agreement with our management services division generating income-fees, applying a proprietary coordinated booking platform for hotel guests under themed hotel attractions fixed to strategic destinations World-wide using the brand name.

5.      Defendant Moyer is an architect by training. He claims to be an international commercial real estate development executive, with substantial and successful experience in concept ideation; design; construction; and delivery of experiential spaces, and **"the owner"** of a vast network of globally recognized resources in the entertainment, retail, and hospitality sectors.

6.      In or about 2017, TMIX offered Defendant Moyer an opportunity to promote his services as an outside consultant to our partners and future partners where he could bid his architecture and management services design; construction; and delivery of experiential spaces on various projects against other bidders in the market.

7.      Defendant Moyer agreed to offer his services and act as an outside consultant for the Company's projects. Use of his services was subject to a business partners exclusive right of approval for which he would generate proposed project design; construction; and delivery of experiential spaces as a consultant provide billing invoices for ADMI-CA.

8.      Defendant Moyer also agreed and authorized the use of his bio-imagery and photo display of his previous projects, doing so intending to promote his services as an independent contractor and consultant to TMIX's existing partners and it future partners. For the use of his biography, his projects and images Moyer was paid outside consulting fees in advance on several projects, totaling more than $200,000. The fees paid were in consideration of TMIX and its subsidiaries express right to use his bio-imagery and photo display for inclusion in the TMIX and

Exhibit "B"

its subsidiaries business plans and decks. This allowed TMIX and subsidiaries to promote his services as an outside consultant.

9.      Defendant Moyer agreed to provided outside-independent consulting services for any of either TMIX, its subsidiaries or affiliate companies projects subject to a partner or client choosing to use his services. He knew and was aware the ultimate decision to use his services was to be decided by the existing and future partners-clients for their individual-particular project.

### Moyer Disclosure of his Financial & IRS Problems.

10.     After Defendant Moyer approved, agreed, and authorized the use of his bio-imagery and photo display, after he received advance payment of $200,000, in or about 2017 he approached me and requested a bailout for his personal and business debts-ADMI-CA, including impending obligations concerning outstanding taxes and penalties imposed by the US Internal Revenue Service.

11.     Defendant Moyer's disclosure of his financial and IRS problems to me resulted in TMIX being forced to provide funding, financial resources, and support to bail him out of his working capital deficiencies. The matter was so serious, that through the Company's established banking partners, because Defendant Moyer had been referred to as an outside consultant on several projects, the Company was forced to continue use of his services and forced to aid him in securing a line of credit for One Million ($1,000,000) Dollars, up to Five Million ($5,000,000) Dollars.

12.     I am advised, informed, and believe, Defendant Moyer withdrew over Two Million ($2,000,000) Dollars and then defaulted on the arranged credit line wherein TMIX's prior good relationship with its banking partners has now been permanently disrupted.

Exhibit "B"

13. In 2021, I approached Defendant Moyer about the default. He said he was trying to fix it and asked about providing his services as an outside-independent consultant for ADMI-NV, He was aware of a business proposal concerning an undertaking known as the RFQ for Notre Dame project. He provided billing invoices in an amount which would have generated fees as an outside consultant for the project wherein the Notre Dame RFQ client refused to proceed with the project due to funding and the Defendant Moyer's bloated invoice.

14. To reduce exposure to its affiliates, partners and future partners the Company scaled back its use and introduction of Moyer to any new projects or partners.

**Moyer's Wrongful Attempt to Force ADMI-Nevada Partners to Make Payments to Him Based on a False Threat to Negatively Influence the Outcome of a Partner's Project.**

15. Since his credit line default, and the Companies scale back, Defendant Moyer has been, and is desperately motivated to find money anywhere he can. He discovered our License Agreement with our Strategic Partners in New York and has now turned to false statements, coercion and extortion, intentionally interfering in the Companies relationships, threatening he will destroy or otherwise interrupt TMIX and ADMI-NV's, relationships with its New York Strategic Partner and other business partners by falsely claiming he and ADMI-CA own the Licensing Agreement under an exclusive use of his services for the Companies projects. He is obviously motivated to stave off creditors.

16. On or about August 2022, Defendant Moyer, who was in California, telephoned me in Nevada and frantically demanded $76,000 payment and other benefits from ADMI-NV for his claim that he had working capital deficiencies related to completing ADMI-CA's consulting obligations and that unless paid he would seek funds directly from the Companies Strategic Partner claiming he and ADMI-CA owned the exclusive use of his services under the

Exhibit "B"

License Agreement and that I stole his bio-imagery and photos and that he never gave us the right to use them.

17. I was fearful of what his false statements would do to my reputation and its effect on interrupting the Licensing Agreement with the Companies Strategic Partner. It was for this reason ADMI-NV was forced to make a payment of $5,000 to Defendant Moyer or suffer the consequences of his false claims and threats to seek money from the Companies Strategic Partners and ruin our reputations.

18. Beyond these threats Defendant Moyer has attempted to secretly obtain money from TMIX and ADMI-NV partners where he is not a consultant, and threatening to negatively influence the outcome of their potential contracts and projects with the Companies and our Strategic Partners.

19. On or about September 12, 2022, Defendant Moyer, who was in California attempted to plunder fees from a TMIX and ADMI-NV intended investor, Peter Aaron Maharaj who was in Hawaii.

20. Having no other way to get money Defendant Moyer sent an e-mail to Mr. Maharaj requesting a telephone conference:

> "As we discussed last week, Joe is currently in Hawaii, I am aware he is there with several of the ▮▮▮▮ Executives. I would encourage you that due to the issues you and Joe have both acknowledged that you not only sign the ADMI Agreement and fund the engagement fee, that you respond to the Draft MOU (attached) request a meeting immediately to review and agree to terms. My fear is that after Friday the ▮ option will no longer be available to you.

Exhibit "B"

Please call me as soon as your time permits, thank you!"

* * * *

21. Defendant Moyer was unlawfully seeking advance payment concerning the Hawaii project. This was a TMIX-ADMI-NV and Strategic Partner project. Based on the email Mr. Maharaj agreed to a conversation with him.

22. I am informed and believe, that during a 90-minute telephone conversation among Defendant Moyer, and Mr. Maharaj, Defendant Moyer made a demand for payment of Five Hundred Thousand ($500,000) Dollars making numerous false and misleading statements concerning the ownership of TMIX and ADMI-NV License Agreement concerning the Hawaii project development with our New York Strategic Partner.

23. Although he knew them to be false and intending to disrupt or otherwise interfere in the TMIX-ADMI-NV, economic interest and relationship with Mr. Maharaj, Moyer told Mr. Maharaj that the subject proposed contracts relied on by him concerning the Brand name provided by the Licensing Agreement relating to his projects did not belong to TMIX or ADMI-NV alone and he had the exclusive right as an architect on any ADMI-NV and TMIX project; that neither TMIX or ADMI-NV had the right to use his bio, imagery photos of his prior projects and that I stole them; TMIX and ADMI-NV were using them without his permission or consent.

24. These statements were made under circumstances where Moyer obviously intended a cash grab. The demand was directed at Mr. Maharaj presenting him with a lost opportunity with ADMI-CA under the Licensing Agreement if he did not comply with his demands.

Exhibit "B"

25. At no time did Defendant Moyer ever have authority to engage in conduct implying any power to decide the outcome of the TMIX-ADMI-NV, projects and the use of the Licensing Agreement.

26. It is apparent, that the statements made by him on September 12, 2022, in both his e-mail and during the telephone conversation were an improper and unauthorized attempt to interfere with in our business relationship with Mr. Maharaj by creating a false appearance of authority and power related to the TMIX-ADMI-NV Licensing Agreement. By doing so he placed TMIX-ADMI-NV and me in a false and misleading light, a manipulation designed to force-induce an execution of an agreement among him and Mr. Maharaj while attempting to injure us in our property, business reputations and future economic interest.

27. By reason of the forgoing Maharaj has refused to enter into an agreement with the ADMI-NV TMIX for fear ADMI-NV and TMIX do not have ownership and the right to use of the License Agreement as claimed.

28. On or about October 8, 2022, Defendant Moyer received a letter advising him to cease and desist his false claims of ownership to the License Agreement and attempt to obtain funds from ADMI-NV and TMIX business relations.

29. I am advised, informed and believe, that after receiving the cease-and-desist letter, Defendant Moyer telephoned an ADMI-NV and TMIX board member and director demanding that unless he received an equity stake similar to the top four executives of these Companies; that unless they made an immediate substantial payment to him of between Eight Million ($8,000,000) Dollars and Fourteen Million ($14,000.000) Dollars, he would destroy the ADMI-NV and TMIX business relations with its Strategic Partner in New York City; wherein Defendant threatened to communicate directly with key director and officer

Exhibit "B"

relationships with the Strategic Partners, where he would falsely claim the ADMI-NV and TMIX's License Agreement was his, under the authority of ADMI-CA and that his bio-imagery and prior projects were being used without his consent; that he never authorized their use and they were" stolen" by me; threatened to force the Companies into bankruptcy and otherwise destroy TMIX and ADMI-NV through protracted litigation, whether his claims were true or not; that he would have his attorneys "destroy" all of the work and projects that had been done with both ADMI-NV and TMIX in building their business.

30. I am informed and believe, that after receiving the cease-and-desist letter on or about October 27, 2022, Defendant Moyer set a deadline of the next week or so to contact the Companies Strategic Partner in New York, demanding the above stated payments and property from ADMI-NV and TMIX or suffer the consequences, wherein he would contact the Companies Strategic Partners in New York and "destroy" their relationship with them.

31. Unless this Court restrains Defendant Moyer, the Companies and me personally will suffer irreparable harm to our business and reputations.

I declare under penalty of perjury that the foregoing is true and correct.
Executed on this 3rd day of November 2022.

_Joseph R. Cellura_
Joseph R. Cellura-Plaintiff

Exhibit "B"