UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADMI INC, TARSIN MOBILE INC., by their CEO, JOSEPH R, CELLLURA and JOSEPH R. CELLURA, Individually,<br><br>                      Plaintiffs,<br>       Vs.<br><br>ALLEN D. MOYER and ADMI INCORPORATED,<br><br>                      Defendants. | Case No. Number: 22-cv-09339-ALC |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR A TEMPORARY RESTRAINING ORDER AND FOR A HEARING GRANTING THEM PRELIMINARY INJUNCTION.**

Respectfully submitted,

                                      Douglas R. Dollinger, Esq. NYS Bar Code 2354926
                                      Law Offices of Douglas R. Dollinger, PC
                                      570 County Rt 49
                                      Middletown, New York 10940
                                      Telephone  845.741.9363
                                      Email ddollingeresq@gmial.com
                                      Attorney for Plaintiffs

## Table of Contents

**Index**                                                                                          **Page(s)**

TABLE OF AUTHORITIES....................................................................................................i

INTRODUCTION………………………………………………………………….....................1

SUMMARY OF THE CASE FACTUAL CLAIMS ....................…………….......................5

STANDARD OF REVIEW RULE 56(A) (1)…………………………………….......................9

ARGUMENTS...................................................................................................................9

    1. Plaintiffs Will Suffer Irreparable Harm.......................................................9

    2. Plaintiffs Are Likely to Succeed on the Merits
        (i) Tortious Interference with
            Prospective Economic Advantage.........................................................12

    3. The Balance of Equities Favors Plaintiffs..................................................13

    4. Public Interest Needs to Be Protected........................................................14

CONCLUSION………………………………..……………………...................................14-15

# Table of Authorities

**Cases**                                                                                                                                     **Page(s)**

*Andino v. Fischer*, 555 F.Supp.2d 418, 419 (S.D.N.Y. 2008)..........................................................................9

*Behihana, Inc. v. Behihana of Tokyo*, 784 F.3d 887, 895 (2d Cir. 2015).........................................9

*Borey v. Nat'l Union Fire Ins. Co.*, 934 F.2d 30, 34 (2d Cir. 1991)……………….............14

*Carvel Corp. v. Noonan,* 350 F.3d 6, 17 (2d Cir. 2003))...........................................................12

*Carvel Corp. v. Noonan,* 3 N.Y.3d 182, 192 (2004)..................................................................13

*Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009)....................9-10

*Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006)..............................................12

*Make the Road New York v. Cuccinelli*, 419 F.Supp.3d 647, 665 (S.D.N.Y. 2019)..................11

*Nassau Roofing & Sheet Metal Co. v. Facilities Dev. Corp.*,
    70 A.D.2d., 1021, 1022 (3d Dept. 1979)..................................................................13
        000

*New York v. U.S. Dep't of Homeland Sec.*,
    475 F.Supp. 3d 208, 226 (S.D.N.Y. 2020)........................................................10

*New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 86 (2d Cir. 2020).....................................9

*Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010)..................................................................10

*Regeneron Pharms., Inc. v. U.S. Dep't of Health and Human Sers.*,
    510 F.Supp.3d 29, 40-41 (S.D.N.Y. 2020)..........................................................12

*Williams v. Rosenblatt Sec., Inc.*, 136 F. Supp. 3d 593, 616 n.11 (S.D.N.Y. 2015).........................9

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).........................................9.10.12

**Federal Rule Civil Procedure-Cont.**

Rule 65(a)(1)....………………………………………………………………………....9

## INTRODUCTION

Plaintiffs. ADMI Inc, (ADMI-NV"), TARSIN MOBILE INC., a publicly traded company on the OTC ( "TMIX") and JOSEPH R. CELLURA ("Cellura") bring this action concerning their business relationships and partnerships nationwide. ADMI-NV and TMIX hold a branded "Licensing Agreement" entered in the State of New York. The License Agreement exists among them and their "Strategic Partner" a major brand management company headquartered in New York City. The Licensing Agreement provides a right to use a branded name in the hotel and hospitality industry. The Brand and its use have a projected value of at least One Hundred Million ($100,000,000) Dollars.

ADMI-NV and TMIX, through their wholly owned subsidiaries, in cooperation with multiple business relationships and individuals is designed to provide management services generating income-fees applying a proprietary coordinated booking management platform for hotel guests under themed hotel attractions fixed to strategic destinations World-wide.

Defendant Allen D. Moyer ("Moyer") is an architect by training. He claims to be an international commercial real estate development executive, with substantial and successful experience in concept ideation; design; construction; and delivery of experiential spaces, and **"the owner"** of a vast network of globally recognized resources in the entertainment, retail, and hospitality sectors.

This action challenges Defendant Moyer's wrongful-unlawful acts of coercion-extortion as an intentional interference with prospective economic advantage in violation of the law concerning false claims of his demand to exclusive use of his services under the terms of Plaintiffs' Licensing Agreement. He claims he has and that his company ADMI-California (ADMI-CA") have the exclusive right to architectural services for any projects concerning the national business relationship developed under the Plaintiffs Licensing Agreement and that Plaintiffs stole his bio-imagery and prior work projects using them without his permission or consent.

The collective Plaintiffs seek immediate injunctive relief which is necessary to prevent irreparable harm to them not simply by reason of Defendant Moyer's past unlawful acts, but his express future threats to injure ("destroy") Plaintiffs in their business -reputations and property.

In the face of unlawful acts already committed against them and, his continuing threats to injure the Companies and CEO Cellura, not only with their Strategic Partner but with other business partners as well. By reason of Moyer's unlawful acts, Plaintiffs have been forced to make payment to him and have been left with stalled relationships with potential business partners who refuse to perform under prosed contractual agreements with them.

## Summary of the Case Factual Claims

In or about 2017, TMIX offered Defendant Moyer an opportunity to promote his services as an outside consultant to partners and future partners allowing him to bid his architecture and management services against other bidders in the market. ("Cellura Decl. ¶6"). Defendant Moyer agreed to offer his services and act as an outside consultant subject to its business partners exclusive right of approval wherein he would provide billing invoices for ADMI-CA. ("Cellura Decl. ¶7"). Defendant Moyer also agreed and authorized the use of his bio-imagery and photo display of his previous projects, to promote his services as an independent contractor to TMIX's existing partners and it future partners. For the use of his biography, his projects and images, Moyer was paid outside consulting fees in advance on several projects, more than $200,000. ("Cellura Decl. ¶8") The fees paid were in consideration of TMIX's use and its use in its subsidiaries business plans and decks. This allowed TMIX subsidiaries to promote his services as an outside consultant. ("Cellura Decl. ¶8"). Defendant Moyer knew and approved of the arrangement. ("Cellura Decl. ¶9"). In or about 2017 Moyer approached Plaintiff Cellura requesting a bailout for his personal and business debts-ADMI-CA, including impending obligations concerning outstanding taxes and penalties imposed by the US Internal Revenue Service. ("Cellura Decl. ¶10). Defendant Moyer's disclosure of his financial and IRS

problems which were so serious, that through TMIX's established banking partners, the Company was forced to continue use of his services and forced to aid him in securing a One Million ($1,000,000) Dollars up to Five Million ($5,000,000) Dollars line of credit. ("Cellura Decl. ¶11"). Defendant Moyer withdrew over Two Million ($2,000,000) Dollars and then defaulted on the arranged credit line. TMIX's prior good relationship has been permanently disrupted. ("Cellura Decl. ¶12"). In 2021, Plaintiff Cellura approached Defendant Moyer about the default who told him he was trying to fix it and asked about providing his services as an outside-independent consultant. Defendant Moyer provided a bloated invoice which was rejected on a project. ("Cellura Decl. ¶13"). In 2021, ADMI-NV and TMIX enter into a branded "Licensing Agreement" in the State New York. The License Agreement exists among them and their "Strategic Partner" a major brand management company headquartered in New York City. The License Agreement provides a right to use a branded name in the hotel and hospitality industry. The Brand and its use have a projected value of at least One Hundred Million ($100,000,000) Dollars. ("Cellura Decl. ¶2"). To reduce exposure to its Strategic Partner, affiliates, and future partners the Company scaled back its use and introduction of Moyer ("Cellura Decl. ¶14"). Since his credit line default, and the Companies scale back, Defendant Moyer has been, and is desperately motivated to find money anywhere he can, even turning to false statements, coercion and extortion, doing so while intentionally interfering in the Companies relationships, threatening he will destroy or otherwise interrupt TMIX and ADMI-NV's relationships with its New York Strategic Partner and other business partners by falsely claiming he and ADMI-CA own the Licensing Agreement. ("Cellura Decl. ¶15"). On or about August 2022, Defendant Moyer frantically demanded $76,000 in payment and other benefits from ADMI-NV for his claim that he had working capital deficiencies related to completing ADMI-CA's consulting obligations and that he would seek funds directly from the Companies Strategic Partner claiming he and ADMI-CA owned the License Agreement and that Plaintiff Cellura stole his bio-imagery and photos. ("Cellura Decl. ¶16"). This

caused fear in Plaintiff Cellura of what this false statement will do to his reputation and its effect on interrupting the Licensing Agreement with the Companies Strategic Partner. ADMI-NV was forced to make a payment of $5,000 to Defendant Moyer or suffer the consequences of his false claims and threats to seek money from the Companies Strategic Partners and ruin their reputations. ("Cellura Decl. ¶17"). Beyond these threats Defendant Moyer has attempted to secretly obtain money from TMIX and ADMI-NV partners and future partners where he is not a consultant, and threatening to negatively influence the outcome of their potential contracts and projects with the Companies and its Strategic Partners. ("Cellura Decl. ¶18"). On or about September 12, 2022, Defendant Moyer who was in California attempted to plunder fees from a TMIX and ADMI-NV intended investor, Peter Aaron Maharaj who was in Hawaii. ("Cellura Decl. ¶19"). Having no other way to get money Defendant Moyer sent an e-mail to Mr. Maharaj requesting a telephone conference:

> As we discussed last week, Joe is currently in Hawaii, I am aware he is there with several of the ▮▮▮▮▮▮ Executives. I would encourage you that due to the issues you and Joe have both acknowledged that you not only sign the ADMI Agreement and fund the engagement fee, that you respond the Draft MOU (attached) request a meeting immediately to review and agree to terms. My fear is that after Friday the ▮ option will no longer be available to you.
>
> Please call me as soon as your time permits, thank you! ("Cellura Decl. ¶20").

* * * *

He was seeking advance payment concerning the future Hawaii project. This was a TMIX-ADMI-NV and Strategic Partner project. Based on the email, Mr. Maharaj agreed to a conversation with him. ("Cellura Decl. ¶21"). During a 1 hour and 30-minute telephone conversation Defendant Moyer made a demand for payment of Five Hundred Thousand ($500,000) Dollars making numerous false and misleading statements concerning the ownership of TMIX and ADMI-NV Licensing Agreement concerning the Hawaii project development with their New York Strategic Partner. ("Cellura Decl. ¶22"). Although he knew them to be false and intending to disrupt or otherwise interfere in the TMIX-

ADMI-NV, economic interest and relationship with Mr. Maharaj, Moyer told Mr. Maharaj that the subject proposed contracts relied on by him concerning the Brand name provided by the Licensing Agreement relating to his projects did not belong to TMIX or ADMI-NV, but were his and the property of his company ADMI-CA; that neither TMIX or ADMI-NV had the right to use his bio, imagery photos of his prior projects and that Plaintiff Cellura stole them; TMIX and ADMI-NV were using them without his permission or consent. ("Cellura Decl. ¶23"). The demand was directed at Mr. Maharaj presenting him with a lost opportunity with ADMI-CA under the Licensing Agreement if he did not comply with his demands. ("Cellura Decl. ¶24"). At no time did Defendant Moyer ever have authority to engage in conduct implying any power to decide the outcome of the TMIX-ADMI-NV projects and the use of the Licensing Agreement. ("Cellura Decl. ¶25"). By reason of the forgoing Maharaj has refused to enter into an agreement with ADMI-NV and TMIX for fear ADMI-NV and TMIX do not have ownership and the right to use of the Licensing Agreement as claimed. ("Cellura Decl. ¶¶26-27"). On or about October 8, 2022, Defendant Moyer received a letter advising him to cease and desist his false claims of ownership to the Licensing Agreement and attempt to obtain funds from ADMI-NV and TMIX business relations. ("Cellura Decl. ¶28"). Thereafter, Defendant Moyer telephone an ADMI-NV and TMIX board member and director demanding that unless he received an equity stake similar to the top four executive of these Companies; that unless they made an immediate substantial payment to him of between Eight Million ($8,000,000) Dollars and Fourteen Million ($14,000.000) Dollars, he would destroy the ADMI-NV and TMIX business relations with its Strategic Partner in New York City; wherein Defendant threatened to communicate directly with key director and officer relationships with the Strategic Partners, where he would falsely claim the ADMI-NV and TMIX's Licensing Agreement was his, under the authority of ADMI-CA and that his bio-imagery and prior projects were being used without his consent; that he never authorized, their use they were" stolen" by Cellura; threatened to force the Companies into bankruptcy and otherwise

destroy TMIX and ADMI-NV through protracted litigation, whether his claims were true or not; that he would have his attorneys "destroy" all of the work and projects that had been done with both ADMI-NV and TMIX in building their business. ("Cellura Decl. ¶29"). Defendant Moyer set a deadline of the next week or so to contact the Companies Strategic Partner in New York, demanding the above stated payments and property from ADMI-NV and TMIX or suffer the consequences, wherein he would contact the Companies Strategic Partners in New York and "destroy" their relationship with them. ("Cellura Decl. ¶30").

### STANDARD OF REVIEW

Pursuant to Rule 65(a)(1) of the Federal Rules of Civil Procedure to obtain a temporary restraining order and/or a preliminary injunction, Plaintiff "must establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Behihana, Inc. v. Behihana of Tokyo*, 784 F.3d 887, 895 (2d Cir. 2015) (describing four factor test). A preliminary injunction may be "warranted on the strength of the . . . first two factors alone." *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 86 (2d Cir. 2020). Such relief is "designed to preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits." *Williams v. Rosenblatt Sec., Inc.*, 136 F. Supp. 3d 593, 616 n.11 (S.D.N.Y. 2015) (quotation markets omitted) "It is well established that in this Circuit the standard for an entry of a TRO is the same as for a preliminary injunction." *Andino v. Fischer*, 555 F.Supp.2d 418, 419 (S.D.N.Y. 2008).

### ARGUMENTS

1. **Plaintiffs Will Suffer Irreparable Harm.**

Irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir.

2009). Plaintiffs must show that "irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S.C at 22, 129 S.Ct. 365 (emphasis in original). Irreparable harm must be "neither remote nor speculative, but actual and imminent." *Faiveley Transp.*, 559 F.3d at 118.

Although "[p]laintiffs need not show that irreparable harm already . . occurred." *New York v. U.S. Dep't of Homeland Sec.*, 475 F.Supp. 3d 208, 226 (S.D.N.Y. 2020) (internal citations omitted), in this case Defendant Moyer has already harmed Plaintiffs AMDI-NV and TMIX, unlawfully demanding and receiving money and disrupting potential contractual relationships.

The threat to continue his misconduct making false claims to disrupt Plaintiffs' Licensing Agreement with its New York Partners and other third parties is a future harm that this Court may consider in issuing a temporary restraining order. "The relevant harm is the harm that (a) occurs to the parties' legal interests and (b) cannot be remedied after a final adjudication, whether by damages or a permanent injunction." *Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010).

Here we have both past harm to Plaintiffs in the forced payment of money to abate his threats and loss of their relationships to pending contractual agreements where Defendant Moyer's wrongful conduct has no excuse in the law. His past conduct is direct evidence existing as a precursor of what he plans to do if he does not get his way-if his unlawful demands are not met. Based on Moyer's past illegal conduct in the absence of injunctive relief Plaintiffs here will suffer immediate, concrete, and irreparable harm.

This is evident giving recognition that Plaintiffs have already be forced to curtail their operations in Hawaii under a breach of their agreement with Mr. Maharaj. A breach induced by Defendant Moyer's false claims that his name-bio and photos were stolen and that he has the exclusive right to provide services under the Licensing Agreement where he can influence the outcome of a project with Plaintiffs Strategic Partner. Defendant Moyer has gone so far as to

demand a Five Hundred Thousand ($500,000) Dollar payment to make him a consultant on Plaintiffs Hawaii projects, where unless the fee was paid the project would "no longer be available to [them]."

It is apparent, unless Defendant Moyer is restrained from interfering with Plaintiffs' business relations, stopped from making additional false claims of exclusivity to his services under Plaintiffs' Licensing Agreement-demanding payment for Plaintiffs' business partners, falsely claiming theft of his bio-identity, Plaintiffs will experience immediate and irreparable harm concerning business operations and a public harm will occur to investors and shareholders to both the Plaintiff Companies and their Strategic Partners.

Plaintiffs will have to advise the public of the false claims and interruption in the ADMI-NV and TMIX relationship and potential partnerships as well as the occurrence and breach, of contract, each of which would have an impact on the market price of Plaintiff and their Strategic Partners shares. *See Make the Road New York v. Cuccinelli*, 419 F.Supp.3d 647, 665 (S.D.N.Y. 2019) (finding irreparable harm existed for "these individuals, Plaintiffs, and the public at large").

Additionally, if there appears to be a question as to the ownership or control of Plaintiffs License Agreement, collaborators and potential investors will refuse to continue their involvement with Plaintiffs, thereby harming them.

The damages stemming from Defendants wrongful acts would be impossible to quantify because the potential profitability of Plaintiffs' loss in potential partners a sum which cannot be reasonably ascertained. Therefore, in this instance, the only proper remedy available at this time would come in the form of injunctive relief, maintaining the current status quo of the Plaintiffs until the instant matter is resolved.

In this case, Plaintiffs' and in particular Plaintiff, Cellura's inability to defend against the false claim he stole Defendant Moyer's bio and photos will harm him and the Companies reputations

resulting in a loss of future clients because it will adversely effect competition. *Regeneron Pharms., Inc. v. U.S. Dep't of Health and Human Sers.*, 510 F.Supp.3d 29, 40-41 (S.D.N.Y. 2020) (finding "irreparable reputation harm" to require a preliminary injunction). Here, Plaintiffs will have no monetary remedy against Moyer's threat of destroying their business and reputations.

## 2. Plaintiffs Are Likely to Succeed on the Merits

To receive a preliminary injunction, the plaintiff must show that it is "likely to succeed on the merits." *Winter*, 555 U.S. 7, 20 (2008). The details set forth in the accompanying Complaint for those portion of the claim for Injunctive Relief, together with the declaration of Plaintiff Cellura proves that Moyer has no lawful right to claim exclusivity or demand payment of between 8 to14 million dollars, or had any entitlement to an unlawful pass-through of ADMI-TMIX Securities. There is no contract or agreement among them granting the Defendants exclusivity or even a right of first refusal and certainly no securities. Simply put, his conduct is coercive under the law.

### i. Tortious Interference with Prospective Economic Advantage.

"[T]o state a claim for tortious interference with prospective economic advantage, the plaintiff must allege that '(1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship.'" *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006) (quoting *Carvel Corp. v. Noonan,* 350 F.3d 6, 17 (2d Cir. 2003)).

"[C]onduct constituting tortious interference with business relations is, by definition, conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship." *Carvel Corp. v. Noonan,* 3 N.Y.3d 182, 192 (2004) (citations omitted). Where the alleged wrongdoer interfered with prospective business relations (as opposed to interfering with an

existing contractual relationship), the conduct must generally amount to a crime or independent tort to be actionable. *Carvel Corp.,* 3 N.Y.3d at 190.

Plaintiffs meet their pleading requirements because the relationship with Maharaj was not yet fully formed. Defendant Moyer knew this and used a false claim of exclusivity targeting Maharaj telling him the business opportunity would no longer be available, doing so while attempting to induce Maharaj to make a Five Hundred Thousand ($500,000) Dollar payment to him-ADMI-CA, falsely advising him that Plaintiff Cellura stole his bio-and photos and that ADMI-NV and TMIX were using it without his consent, Under the circumstances Defendant Moyer was acting solely out of malice, in a dishonest and unfair manner, or improper means causing interference and injury to the relationship among Plaintiff's and Maharaj directly effecting Plaintiffs' right under the Licensing Agreement.

3. **The Balance of Equities Favors Plaintiffs**.

When "the irreparable injury to be sustained by the plaintiff is more burdensome to it than the harm caused to defendant through imposition of the injunction," the balance of equities favors the plaintiff. *Nassau Roofing & Sheet Metal Co. v. Facilities Dev. Corp.,* 70 A.D.2d., 1021, 1022 (3d Dept. 1979).

Here considering the totality of the circumstances, there is no question that the balance of equities favors Plaintiffs. There is no lawful basis for Defendant Moyer to claim an exclusive right to services under the Licensing Agreement. There are no written agreements among Plaintiffs and Moyer to exclusively use his services. Any oral agreement with Moyer and ADMI-CA was narrowly tailored to accommodate Plaintiffs and it customers right to control their projects. It would be inequitable to force a future business partner to support Defendant Moyer's services when he has no claim or a lawful right to do so.

Moreover, there is no hardship the Defendants will be able to point too. The Defendant Moyer and ADMI-CA remain free to solicit in the open market. Their services will not be impaired; they simply cannot divert the business that belongs and was developed, or was in the process of being developing under the Licensing Agreement by Plaintiffs to themselves. Accordingly, the hardship here falls squarely on Plaintiffs, not the Defendants Moyer or ADMI-CA.

   **4. Public Interest Needs to Be Protected.**

The public shareholders and investors alike have a strong interest in ensuring that the Defendant Moyer's conduct is restrained. Absent a temporary restraining order there is a high likelihood of a negative effect to the reputation of not just ADMI-NV and TMIX as it re-enters the public market but it's Strategic Partner as well. The loss in shareholder and investor confidence will undermine the ability of the Plaintiff to raise funds in the future, needed to timely complete their existing and future projects.

The loss of investor confidence will be the direct result of the Defendant Moyer's false claims. Plaintiffs are *already* struggling with challenges caused by the current market, including increased building costs and land purchase. *Borey v. Nat'l Union Fire Ins. Co.*, 934 F.2d 30, 34 (2d Cir. 1991).

## Conclusion

For the foregoing reasons, Plaintiffs respectfully request this Court to grant their Motion for a temporary restraining order, and set a hearing date for a preliminary injunction. The instant matter presents clear-cut issues of fact and law. Defendants do not have any authority to act on behalf of Plaintiff Companies or Cellura, yet the Defendant Moyer brazenly and falsely claimed to do so with wanton disregard for the demands made by Plaintiffs to cease and desist all such activity. The damage that can be caused by the rogue Defendant's unlawful acts is overt, irreparable, and immediate. Under such circumstances, only equitable relief will protect Plaintiffs and their interests.

Wherefore, Plaintiffs respectfully request that this Court grant it a Temporary Restraining Order and set hearing date for a Preliminary Injunction.

Dated: November 3, 2022

*Douglas R. Dollinger, Esq.*
Douglas R. Dollinger, Esq. NYS Bar Code 2354926
Law Offices of Douglas R. Dollinger, PC
570 County Rt 49
Middletown, New York 10940
Phone | 845.741.9363
Email ddollingeresq@gmial.com
Attorney for Plaintiffs