UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADMI INC, TARSIN MOBILE INC., by their CEO, JOSEPH R. CELLURA and JOSEPH R. CELLURA, Individually,<br><br>                       Plaintiffs,<br>Vs.<br>ALLEN D. MOYER and ADMI INCORPORATED,<br>                       Defendants. | Case No.: Number:22-cv-9339-ALC<br><br>**Declaration of Joseph R. Cellura in Opposition to the Defendants' Rule 12(b)(2) & 12(b)(5) Motions for Lack of Personal Jurisdiction of the Defendants and in Support of Plaintiffs' Cross-Motions.** |

Pursuant to 28 U.S.C.§ 1746, Plaintiff Joseph R. Cellura hereby declares as follows:

**1.** This declaration is made in support of Plaintiffs' opposition to the Defendants' motion to dismiss (hereinafter "the motion to dismiss") for lack of personal jurisdiction and for insufficient service of process as well as Plaintiffs' cross-motions. (Dkt-41.)

**2.** I am the Director and Chief Executive Officer of ADMI Inc, ("ADMI-NV") a Nevada company headquartered in New York and Chief Executive Officer of Tarsin Mobile Inc., ("TMIX"). TMIX, a Florida corporation and publicly held company. I agreed to mediate and to the request that the Court stay this matter in December 2022, based on Defendant Allen D. Moyer's (hereinafter "Defendant Moyer") prior friendship with me. (Exhibit "A".)

**3.** I have read the allegations set forth in the Defendants' Action filed in the state of California and the Declaration of Defendant Moyer on his and on behalf of ADMI INCORPORATED ("ADMI-CA") in support of the motion to dismiss Plaintiffs' New York Action. (Dkt-27.2 & 41.2.)

**4.** I became ill in late February 2023, and was hospitalized from early March to the end of May 2203. During that time, I authorized the Companies Vice President, Michael Ghiselli to negotiate with him. I became aware settlement talks had broken down only after I was served with Defendants' California Action in late July 2023. (Dkt-27.2.)

5. Defendant Moyer's statement that the last time he had business contacts in the state of New York was approximately 10 years ago is untrue. (Dkt-41.2¶4.)

6. Defendant Moyers' statement my companies and I are impersonating ADMI-CA, in New York or elsewhere are untrue. (Dkt-41.2¶13.)

7. Other than our similar prefixed name each ADMI entity operates in different business areas and has different target markets in different geographical locations California and Nevada. Each is filed with the Secretary of State for each state.

8. ADMI-NV is operated under a software licensing agreement with TMIX, and its wholly owned subsidiaries, ADMTech, Inc., Monumint, Inc. f/k/a EP5.

9. The ADMI-NV business model is focused on linked magazine mobile applications featuring its proprietary intellectual property ("IP") a SaaS platform. The platform delivers branded augmented reality experiences to a wide range of businesses by featuring a robust API for standalone or customization designed linked to existing as well as changing leisure and travel destination content and products. The App makes it easier for hotel sponsors to target resort guest to their destinations providing access to a platform which allows individual vendors to sell their brand merchandise by engaging consumers in a live augmented-reality experiences while at the same time providing opportunities to share fees and rewards under separately recognize loyalty programs between sponsors and vendors. The sponsor can target their brand products and services to branded vendors bringing instant recognition, building brand loyalty to both sponsors and vendors apply TMIX's App.

10. Defendants are engaged in commercial real estate development featuring concept-design and construction build out providing experiential spaces throughout the United States and internationally.

11. In early 2019, the Defendant Moyer, told me he was hired to update and build out the New York City Apple Store in 2019-2020. His website features the work and through public notice-press releases, although they do not mention the Defendants directly, they prove the work was performed 2019-2020. Far less than 10 years before. (Dkt-27.2 ¶11.)

12. In fact, their Marketing Deck and website ADMI INCORPORATED (https://admii.com) feature the Apple Store project photo as a work project he designed. It contains Moyer's bio and services offering factual claims (whether true or not) of past accomplishments, together with stock photos easily recognized in the public domain consisting of freely circulated imagery clearly identifying Defendants as independent contractors in dissimilar business. (Exhibit "B".)

13. This Court should be aware of and consider the prior relationship Plaintiffs had with the Defendants.  In or about June 2016, Defendant Moyer was introduced to TMIX.  We approached him with the idea of a joint venture using his hotel construction site development company ADMI-CA, and his funding source company, Corinthian Development Company ("Corinthian"). We intended to work together planning to enhance guest destination awareness using the SaaS IP software being developed by TMIX through its subsidiaries ADMTech and EP5-Monumint.

14. The Defendant Moyer offered ADMI-CA, and Corinthian services to TMIX. They included site development,  managing and negotiating funding needs with lenders, banks, and other capital sources to be run and administered by his associate Executive Vice President Mark Melchiori.

15. I became alarmed by what I perceived was a high-pressure attempt by the Defendant Moyer  to give control of TMIX's IP and finances to him  and Melchiori.

16.     We were unable to reach an agreement for the joint venture, but we agreed that ADMI-CA/TMIX and its subsidiaries would share business referrals as independent contractors. Defendant Moyer authorized the use of his bio, imagery, and website in the TMIX subsidiary companies and ADMI-NV Marketing Decks for referral service.

17.     Shortly after the failed attempt to joint-venture, I discovered Melchiori had been indicted on 47 counts of fraud. Defendant Moyer denied his knowledge of the indictment and because we had become good friends, and there was no proof at the time of his involvement, we gave him the benefit of any doubt and continued to make referrals.

18.     After more than a year of negotiations, in May 2021, ADMI-NV negotiated a fully executed branded licensing agreement and business relationship with Authentic Brands Group (hereinafter "ABG") a New York based company, agreeing to provide our proprietary SaaS IP services. The License Agreement was entered into in the state of New York with a value of more than Seventy-Five Thousand ($75,000.00) Dollars.

19.     During negotiations, on February 13, 2021, Defendant Moyer sent me an email asking for an introduction to ABG as an independent contractor. (Exhibit "C".) Attached to the email was his ADMI-CA's Marketing Deck with its website link. (Exhibit "B".)

20.     I made the introduction to ABG in or about March 2021, and forwarded the Marketing Deck. The email proves Defendant Moyer's Declaration statement is untrue. His Declaration was made under penalty of perjury-swearing that neither he nor ADMI-CA had prior business relationship in New York for the past 10 years. (Dkt-41.2¶14.) But the Defendants' California Action claims otherwise, that they had a prior business relationship with ABG. (Dkt-27.2 ¶18.) It also conflicts with his website and the timeline concerning the New York Apple Store design on his website.

21. Since our agreement with ABG, Melchiori has been convicted for matters related to at least one of the featured projects (Canary Hotel) on the ADMI-CA website. https://www.independent.com/2020/02/20/construction-mogul-gets-nine-years-for-bilking-movie-producer. His actual conviction became known to us only after the introduction to ABG. Had we known then what became public, we would not have made the referral for the Defendants' independent services to ABG or any other of our clients and potential clients.

22. In or about August 2022, Defendant Moyer learned of the ADMI-NV Agreement reached with ABG. He was upset he was not included in the Agreement and started a series of direct threats to coerce me into including him in the Agreement demanding both money, securities, and control of the TMIX.

23. He sent an email demanding cash and securities from the Plaintiff Companies, threatening that unless we paid him, he would destroy our business. (Exhibit 'D".) After we refused to make payment, he sent additional emails claiming we stole his imagery with a letter, His emails claim the letter was authored by his attorneys. (Exhibit 'E" & "F".)   The letter makes false claims threatening to send it to Plaintiffs partners and investors by contacting them, and targeting those located in New York including ABG. (Exhibit "G".)

24. The letter (Exhibit G) advises the reader not to do business with me and was intended to intentionally confuse its readers. It was clearly vague in the use of the name ADMI. It was written without identifying ADMI's home state or business activity. It was intended to further his demands of the Plaintiff Companies by instilling fear attempting to intimidate me as CEO. Again, TMIX is a public company.  He next sent a letter demanding more than $10,000,000 in cash and securities.  (Exhibit "H".) We are accountable to report to the Securities and Exchange Commission any attempt to extort. The matter has been turned over to our attorneys.

Declaration of Joseph R. Cellura in Opp to Defendants Rule 12(b((2) &(5) and Cross-Motions 22-cv-9339-ALC

25. Notwithstanding the demand, we would not make payment to the Defendants and as admitted Defendant Moyer has contacted ABG regarding the alleged "impersonation" and his associated claims. (Dkt-27.2 ¶18.) There has been no impersonation of Defendants, at least not by Plaintiffs.

26. It is for this reason that the Defendant Moyer's statements are untrue, that the Plaintiffs' Action has nothing to do with New York and that he has no business activities in New York related to our claims. (Dkt-41.2¶¶4,14.) His activities here in New York are recent and continuing to this date. They are directly related to Plaintiffs' Agreement with ABG. His need for the introduction proves this occurred in 2021, and makes his declaration statements untrue. All the witnesses to both parties claims are here and reside in New York. His Declaration was intended to avoid any finding of his New York activities, and having to litigate the claims in New York.

27. Defendant Moyer has circulated the letters to the effect stated above.

28. Defendants are directing their activities at the Plaintiffs' business in New York.

29. Defendants and their attorneys have intentionally and maliciously interfered in Plaintiffs' business relations conspiring to extort Plaintiffs with threats to destroy Plaintiffs' contractual relationships and reputation in New York and their unlawful acts have in fact done so.

30. The relationship with ABG and other partners that would have resulted in future profits, fees to be paid to ADMI-NV has been impaired with a reduction in value of our contracts to no less than 24% loss of income. This is only a small portion of the overall loss to the Plaintiff companies' profits associated with breaches to Plaintiffs' contractual rights.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 15th day of September 2023.

_____
Joseph R. Cellura