# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

ADMI INC, TARSIN MOBILE INC., by their CEO,
JOSEPH R. CELLURA and JOSEPH R.
CELLURA, Individually,

Plaintiffs,

VS.

ALLEN D. MOYER, ADMI INCORPORATED,
AND DOES 1-2,

Defendants.

**Plaintiffs' Memorandum of Law in Response to Defendants' Motion to Dismiss Fed. R. Civ. P. 12(b)(2) & 12(b)(5) and in Support of Plaintiffs' Fed. R. Civ. P. 4(m) Motion and for Judicial Discovery of Personal Jurisdiction and Venue Fed R. Civ P. 13(a).**

Respectfully submitted,

*Douglas R. Dollinger, Esq.*

Douglas R. Dollinger, Esq. 5922
Law Offices of Douglas R. Dollinger, PC
570 County Rt 49
Middletown, New York 10940
Telephone  845.741.9363
Email ddollingeresq@gmial.com
Attorney for Plaintiffs

## <u>TABLE OF CONTENTS</u>

**Page No.**

Table of Authorities..........................................................................................................ii-iii

Introduction.......................................................…………………………….…………1

Procedural Background…………………………………………………………………2

Plaintiffs Allegations………………………………………………………………...3

Argument I.......................................…………………………………….…………2

    A.   Defendants Have Been  and Continue to  Engage in  Bad Faith Such That
           Good Cause Exists to  Extend the Plaintiffs' Time for Service of  Process ……………..5

        1.   Counsels'  Agreement and Terms of the Requested Stay……………………………..7

        2.   Rule 4(m) Provides 90 Days to Serve Process…………………………………………7

        3.   The Court Granted a Stay, Plaintiff has Until September 20, 2023, to Serve…………8

Argument II………………………………………………………………………………5

    B.   Defendants' Purposeful Activities in New York Establish Personal Jurisdiction
           Over  Them  Pursuant  to New York's Longarm  Statute   C.P.L.R. 302 (a)(1)………………9

        1.   Long-arm Jurisdiction Exits Over the Defendants
             Pursuant to N.Y. C.P.L.R. 302(a)(1)………………………………………….………10

        2.   Defendants Acts Constitute Minimum Contacts and Satisfy Due Process……………15

        3.   Plaintiffs are Entitled to an Order Granting  Discovery to Avoid Injustice…………16

        4.   The First to File Rule is Controlling not the First to Serve…………………………16

        5.   New York is the Proper Venue…………………………………………………17

Conclusion.......................................................................................................................18

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                       **Page**

*Albert Fadem Trust v. Duke Energy Corp.*, 214 F.Supp.2d 341, 343 (S.D.N.Y. 2002)............17

*Best Van Lines, Inc. v. Walker, 490 F.3d 239, 242* (2d Cir. 2007)..........................9,10,16

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985).......................................16

*Deutsche Bank; Henderson v INS*, 157 F3d 106, 123 [2d Cir1998]................................11

*Deutsche Bank Securities, Inc. v Montana Board of Investments,*
    7 NY3d 65 [2006].......................................................................10

*D.H. Blair Co., Inc. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006)..........................9,17

*Employers Ins. of Wausau v. Fox Entertainment Group, Inc.,*
    522 F.3d 271, 274 (2d Cir. 2008).......................................................17

*First City Nat'l Bank & Trust v. Simmons*, Page  878 F.2d 76, 79 (2d Cir. 1989)............17

*Fischbarg v Doucet*, 9 NY3d 375, 380 [2007].........................................................11-13

*Hanson v Denckla*, 357 US 235, 253 [1958].............................................................11

*In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992)..................................17

*In re Magnetic Audiotape Antitrust Litig.,* 334 F.3d 204, 206 (2d Cir. 2003) ................10

*Kreutter v McFadden Oil Corp.*, 71 NY2d 460, 467, 527 NYS2d 195 [1988])..................10,12

*Lebel v Tello*, 272 AD2d 103, 707 NYS2d 426 [1st Dept 2000])...................................10

*McKee Electric Co. Inc. v Rauland-Borg Corp*, 20 NY2d 377, 382 [1967])......................10

*Meeropol v. Nizer*, 505 F.2d 232, 235 (2d Cir. 1974).................................................17

*New York Marine and General Ins. Co. v. LaFarge North America, Inc.,*
    599 F.3d 102, 112 (2d Cir. 2010)........................................................17

*Ontel Products, Inc. v. Project Strategies Corp.,*
    899 F. Supp. 1144, 1150 (S.D.N.Y. 1995)...............................................17

*PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1109 (2d Cir.1997)..............................12

## <u>TABLE OF AUTHORITIES CONT.</u>

**Cases**                                                         **Page**

*Porina v. Marward Shipping Co., Ltd*., 521 F.3d 122, 127 (2d Cir. 2008)......................................15

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)…………..18

*Salomon Smith Barney, Inc. v. McDonnell*, 201 F.R.D. 297, 303 (S.D.N.Y)................................12

*Schnabel v. Ramsey Quantitative Systems, Inc.*,
   322 F. Supp.2d 505, 511 (S.D.N.Y. 2004)..............................................................................17

*Serio v. Surge Resources, Inc.,* 2006 WL 559460, at *4 (S.D.N.Y. March 7, 2006)..................14,16

*Sony Music Entertainment Inc. v Does 1-40*
   326 FSupp2d 556 [SDNY 2004])............................................................................................16

*Sterling Nat'l Bank & Trust Co. of NY v Fidelity Mortgage Investors*,
   510 F2d 870, 873 [2d Cir1975])............................................................................................10

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC,*
   450 F.3d 100, 103 (2d Cir. 2006)...........................................................................................14

*Trceline Inv. Partners, LP v. Koren*, No. 07 Civ. 1964,
   2007 WL 1933860, at *2 (S.D.N.Y. July 3, 2007).................................................................16

*United States v. Avenatti*, (S1) 19 Cr. 373 (PGG) (S.D.N.Y. Jul. 6, 2021)...................................6

*Volkart Bros., Inc. v M/V Palm Trader*, 130 FRD 285, 290 [SDNY 1990])..................................16

**Federal Codes-Statutes:**

Fed Rule Civ. P. 4(m)……………………………………………………………………….5,6,7,8

Fed Rule Civ. P. 12(b)(2)………………………………………………………………………1,3,5

Fed Rule Civ. P. 12(b)(5)………………………………………………………………………1,3.5

Fed Rule Civ. P. 13(a)……………………………………………………………………………3,17

Fed Rule Civ. P. 1404(a)…………………………………………………………………………17

**New York State Statutes:**

CPLR 302(a)(1)……………………………………………………………………………..*Passim*

**Introduction.**

This Memorandum, Plaintiff Cellura's, Counsel's Declarations, Plaintiffs' Amended Summons-Complaint and its Exhibits "A"-"H" are submitted in response to the Defendants' 12(b)(2) & (5) Motion and in support of the Plaintiffs' Cross-Motions for an Enlargement of Time to Perfect Service of Process for Jurisdictional Discovery and Venue. There are two components and predicates to the lack of personal jurisdiction raised as a defense to these proceedings.

The first component involves service of process, which implicates due process requirements of notice and opportunity to be heard, claiming because they were not "properly" served Defendants are not subject to the jurisdiction of the Court. The second argument involves the power, or reach, of this Court over the Defendants to enforce the Courts' orders and decrees with there being a constitutionally adequate connection between the Defendants, the State, and the action. Neither of these defenses has merit and this Court must deny the motions.

To begin with, the Plaintiffs' time to perfect service has not yet expired due to the stay in these proceedings and the pending motions. Notwithstanding the arguments presented in their motions, the Defendants are subject to the personal jurisdiction of this Court. The evidence supports a finding that there is a direct relationship between Plaintiffs' claims for fraud, civil conspiracy and tortious interference linking the Defendants' purposeful activities in New York to the Plaintiffs' business and property injuries in New York.

Accordingly, CPLR § 302(a)(1) provides a proper basis for personal jurisdiction over the Defendants.

The Court should first consider and be aware the Defendants have admitted to their activities in New York having pled the facts in their California Action. Their pleading also admits a direct nexus with the core claims in this case. Dkt-27.2¶18.) Nevertheless, despite these

Plaintiffs' Memorandum Response to Defendants' FRCP 12(b)(2) & (5) Motion and in Support of Cross-Motions.

**Page 1 of 18**

admissions, if there is any doubt remaining on the issue of personal jurisdiction it should be made only after jurisdictional discovery has been exchanged, including depositions of the parties.

**Procedural Background.**

Plaintiffs were first to file their Action on November 2, 2022. (Dkt-5.) Notice of updated service report over the Defendants was filed on November 30, 2022. (Dkt-19 & 22.)[1] On November 23, 2022, Plaintiffs' filed an *ex-parte* motion to serve by email for the deliberate avoidance of service over the Defendant Moyer, individually, and as the agent for ADMI Incorporated. (Dkt-20.) On November 30, 2023, Plaintiffs filed an updated service report indicating multiple attempts made to the Defendants at their place of business and Defendant Moyer's home. (Dkt-22.) On December 8, 2022, Plaintiffs' Counsel received a written request with terms from Defendants' attorney Edward Kerns to stay Plaintiffs' New York Action for the purpose of settlement negotiations. The email was copied to Attorney Michael Kouri and terms approved by the Plaintiff Cellura. (Cellura Decl.¶2, Exhibit "A".)

On December 9, 2022, this Court granted the parties a stay of the proceedings to engaged in settlement discussions, which included the terms that in the event of settlement breakdown the Plaintiffs would file an amended complaint and Defendants would file their answer or file any other motion within 30 days of Plaintiffs filing their amended complaint. (Dkt-23-24.) However, on June 30, 2023, Defendants filed a complaint in the Northern District of California against Plaintiffs

---

[1] Defendants erroneously claim that Counsel's statement means service was perfected and not updated requires the Court to disregard the filing sequence and content of the documents filed pre and post their submission of the Motion to Enjoin. (Counsel's Declaration and letter of July 27, 2023, inadvertently misstated service was complete. (Dkt-25 & 27.) However, the correspondence advising the Court and proof of service clearly indicates the Affidavits of Service were filed as an "update" as proof to the multiple attempts at service and proof of the Defendant Moyer's intentional avoidance of service. (Dkt-19 & 22, Jose Marin Decl.) They were submitted in support of the motion for an Order allowing email service. That motion was withdrawn for the reason Edward Kerns, an attorney located in California, contacted the undersigned, and identified himself as counsel for the Defendants. Counsel for the parties entered into an agreement to negotiate a settlement or otherwise address Plaintiffs' Complaint and a motion to quash service. Obviously, Attorney Kerns received the Complaint from somewhere most likely Defendant Moyer. The Court was notified and approved the matter allowing the motion to be withdrawn and ordered the proceedings be stayed based on the Agreement among Counsel. (Dkt-23 & 24.)

Plaintiffs' Memorandum Response to Defendants' FRCP 12(b)(2) & (5) Motion and in Support of Cross-Motions.

**Page 2 of 18**

(hereinafter "the California Action"). (CA-Dkt-1, CIVIL DOCKET FOR CASE #: 5:23-cv-03004-SVK). On July 18, 2023, Defendants served Plaintiffs with the complaint for the California Action. (CA-Dkt-9 & NY Dkt27.2.)

On July 27, 2023, Plaintiffs sought permission to lift the stay and file a motion to enjoin. (Dkt-25.)  The Court granted the request on July 28, 2023. (Dkt-26.)  On July 31, 2013, Plaintiffs  filed their Motion to Enjoin the California Action under the First Filed Rule, asserting a claim that the California Action was nothing more than a compulsory counterclaim to the Complaint pending before this Court pursuant to Fed. R. Civ. P13(a). (Dkt-27 & 27.2.)  Plaintiffs served Attorneys Kerns and Kouri via Federal Express. Federal Express completed delivery to Attorney Kouri. (Dkt-28.3).   No Response was received. Attorney Kerns parcel was undeliverable as the office was permanently closed. (Jose Marin Decl.) On August 18, 2023, Plaintiffs filed a Proposed Order and Declaration with proof the motion was served on Counsel via Federal Express. (Dk-29 & 30.2.)  No response was received. On July 28, 203 the Court issued an Order to Show Case. (Dkt-32.)

On August 21, 2023, Counsel for the Defendants was served with the Motion to Enjoin. (Dkt-31.) They  have been granted Pro-Hac Vice admission limited to a special appearance. (Dkt-33-37.) On August 28, 2023, Defendants filed their Motion for Dismissal pursuant  Fed. R. Civ. P 12(b)(2) &(5), claiming a lack of personal jurisdiction, due to improper service, and insufficient contacts with New York.  (Dkt-41.) Plaintiffs have filed their Amended Summons and Complaint on notice as of right. (Dkt-48-50.)  On September 13, 2023, the Defendants notified the Court they are proceeding on their original motion to dismiss as filed. (Dkt-52.)

### Plaintiffs' Allegations.

The Plaintiff ADMI-NV has its principal place of business in New York and after a year-long series of negotiations obtained a license (hereafter "Agreement") to provide its

Plaintiffs' Memorandum Response to Defendants' FRCP 12(b)(2) & (5) Motion and in Support of Cross-Motions.

**Page 3 of 18**

proprietary SaaS IP services for a famous mark and brand with its New York partner Authentic
Brands Group in May 2021, (hereinafter "NY Partners" and/or "ABG".) (Dkt-48 ¶¶5, 13-15 &
Cellura Decl. ¶18.); that shortly prior thereto in or about February 2021, Plaintiff Cellura, at
the request of Defendant Moyer, introduced him to ABG executives in New York providing
Defendant ADMI-CA's Marketing Deck for site and construction development services (Dkt-
48 ¶62 & Cellura Decl.¶19-20, Exhibits "B" & "C".); that in or about September 2022,
Defendant Moyer discovered the Plaintiffs' and ABG Agreement; that without justification or
a lawful right to do so the Defendant Moyer and his attorneys began sending correspondence
(emails and an attorney letter to Plaintiffs and others-Exhibits "D"-"H".) containing fraudulent
and intentionally false statements, intended to cause fear in Plaintiffs, threatening to bring an
end to Plaintiffs' business Agreement with ABG; that the letter was written in a manner
intentionally omitting information and facts so as to make the statements true and constitute  a
fraud,  part of a  plan and scheme among Moyer and his Attorneys intended to coerce and
otherwise extort Plaintiffs ADMI-NV and TMIX of cash and securities by falsely claiming that
Plaintiff Cellura stole the Defendants' imagery-likeness and used their identity to obtain the
Agreement (Dkt-48 ¶¶99, 103,116, 118, 149, Dkt-27-2¶2, Cellura Decl.¶ 23.); that as part of
the scheme the Defendant Moyer unlawfully and without justification demanded that he and
ADMI-CA be included in TMIX and the ADMI-NV New York-ABG Agreement (Cellura
Decl.¶¶22-29, Exhibits "D"-"H".); that Defendants unlawfully and unjustly demanded that
Plaintiffs pay money and securities between Eight Million ($8,000,000) Dollars and Fourteen
Million ($14,000.000) Dollars, (Dkt-48 ¶102 Cellura Decl. ¶24, Exhibits "D" & "H".); that the
Defendants' California Action admits Plaintiff ADMI-NV has its principal place of business
in New York. (Dkt-2.2¶4.); that Defendant Moyer has a business relationship with ABG in

Plaintiffs' Memorandum Response to Defendants' FRCP 12(b)(2) & (5) Motion and in Support of Cross-Motions.

**Page 4 of 18**

New York; that Defendant Moyer contacted ABG concerning the Plaintiffs-ABG Agreement claiming the Partners were "confused" by Plaintiffs' impersonation of him-ADMI-CA and executed the Agreement with Plaintiffs, falsely believing they were doing so with him and ADMI-CA as the real intended beneficiaries of the contract (Dkt-27.2¶¶18-21.); that Plaintiffs' claim the collective Defendants intentionally, unlawfully and without justification engaged in false claims related to Plaintiffs Agreement with ABG (Cellura Decl.¶18-26.); that Plaintiffs have suffered consequential and special damages by reason of the Defendants' conspiracy to interfere, coerce and extort Plaintiffs, that the Defendants have acted maliciously intending to destroy Plaintiffs' business relationships in New York, including their names and business reputations (Cellura Decl.¶29-30.); that the Plaintiffs seek injunctive relief prohibiting Defendants from further interference with their New York partners and potential business relations in New York. (Dkt-48 ¶¶181-182.)

### Argument I.

**A. Defendants Have Been and Continue to Engage in Bad Faith Such That, Good Cause Exists to Extend the Plaintiffs' Time for Service of Process.[2]**

It is obvious why the Defendants do not acknowledge the agreement reached with Attorney Kerns and the effect the stay issued by this Court had on service. (Dkt-30.) They are acting in bad faith and are bound by the terms of the agreement and now invite default for their failure to honor that commitment. Instead of honoring the terms of the agreement, Defense Counsel presents a spurious claim that Fed. R Civ. P. Rule 4(m) acts as a preclusion for lack of service for any period beyond the 90-days for process under the Rule.

---

[2] Under Fed. R. Civ. P. 12(b) Defendants are obligated to accept service or pay the added cost in perfecting service and this motion practice. Defendant Moyer's Declaration and Counsel letter are each a deliberate avoidance of service under the Rule. Plaintiffs are preparing two separate Motions on the bad faith and unnecessary cost of these proceedings.

Plaintiffs' Memorandum Response to Defendants' FRCP 12(b)(2) & (5) Motion and in Support of Cross-Motions.

Hopefully, their bad faith has not escaped the Court's attention. Defense Counsel makes a point to allege incompetency on the part of Plaintiffs' Counsel in perfecting service and the failure to recognize the Court's lack of *in personam jurisdiction*, doing so while: 1) ignoring the parties Agreement; 2) refusing to accept service of the Summons and Complaint, sidestepping the Defendant Moyer's improper acts in delaying these proceedings where the Defendant Moyer's own words are compelling: "I never authorized any of my attorneys to accept or waive service of process on my behalf. My attorneys never asked me to accept or waive service of process on my behalf.  New York has no personal jurisdiction over me, I would never permit my attorneys to accept service of process on my behalf." (Dkt-38-2¶8.); 3) the Defendants' admit to facts  in their California Action establishing New York's personal jurisdiction over them. The facts are core to the issues before this Court, a claimed dispute arising from the Plaintiffs Agreement with ABG; 4) and now refusing  to accept service of the Amended Summons and Complaint as requested. (Dkt-48, 27.2¶18, Cellura Decl.¶¶22-29, Exhibits "D"-"H".)[3]

Even without the proof of their letter and emails, each of which establishes the real reason to avoid this Court's jurisdiction, there can be little doubt Defendants and their Counsel are acting in bad faith. Plaintiffs' counsel reasonably relied on three factual and legal matters, each of which provides proof of good cause on the part of Plaintiffs: 1) the Agreement among Attorney Edward Kerns, Counsel for Defendants  concerning his request for a stay to negotiate a settlement and the tolling of all statutes of limitations;[4] 2) the provisions of Rule 4(m) granting 90 days for service;

---

[3] See, *United States v. Avenatti*, (S1) 19 Cr. 373 (PGG) (S.D.N.Y. Jul. 6, 2021).  The facts-Exhibits, and law are on all fours with this case and constitute unlawful activity.  (Cellura Decl. *Passim*, Dkt-48, Exhibits "A-J".) Incredibly, Counsel provided a threatening letter constituting a part of the plan to extort Plaintiffs directing Moyer to serve the letter on Plaintiffs such that  they were acting unlawfully as conspirators to coerce and otherwise extort the Plaintiff Companies of their money and  securities, where the letter expresses their intent "is to make assurance that [the recipients] do not engage in business with Cellura" such that the letter constitutes interference in Plaintiffs' Agreement and business relations with ABG as matter of law.

[4] Plaintiff Cellura in his individual capacity and as the CEO of ADMI-NV and TMIX intended to engage in the negotiations with Defendant Moyer but became ill in early February 2023. (Mr. Cellura

Plaintiffs' Memorandum Response to Defendants' FRCP 12(b)(2) & (5) Motion and in Support of Cross-Motions.

**Page 6 of 18**

3) reliance in the Court's order granting a stay under Rule 4(m) to perfect service though process or consent to accept service under the Rules.

### 1.    Counsels' Agreement and Terms of the Requested Stay.

Defendants' Agreement with Plaintiffs' Counsel required the parties to proceed on notice having previously engaged the power of the Court to stay the proceedings. There were express terms for resuming the action if the matter did not settle, a condition violated by Defense Counsel in filing the California Action presenting good cause to deny the Defendants' Motion and holding that New York is the proper venue.[5]  (Exhibit "A".)

The relevant portions of that Agreement provide:

2.   That all statutes of limitation in all states will be reserved and stayed;

3.   That should mediation fail and we are required to proceed, we will have 30 days notice in which to make a special appearance or otherwise and bring a motion to dismiss/quash service of the complaint based on lack of jurisdiction or otherwise.

### 2.    Rule 4(m) Provides 90 Days to Serve Process.

This Court must also reject any argument that the time to serve the First filed Complaint Amended Complaint has expired. Rule 4(m) provides that the Plaintiffs have 90 days to serve process, but provides additional time to serve Defendants for good cause.

Federal Rule of Civil Procedure 4(m) states:

---

and Mr. Moyer were at onetime good friends and it was hopeful they could simply mend fences and get back to work.) Due to his illness, Mr. Cellura was unable to directly engage in settlement negotiations. He was hospitalized from early March to late May 2023. Instead, Michael Ghiselli a member of the Board of Directors for ADMI-NV and TMIX took control of the settlement discussions with the Defendant Moyer. (Cellura Decl. ¶¶2 & 4.)

[5] Attorney Kouri would like the Court to view his communications being unanswered, despite his direction not to serve his office. Although Defense Counsel must have known they did not advise Plaintiffs' Counsel that Attorney Kerns was facing a suspension and was disbarred post our Agreement. Counsel only recently discovered the matter. This explains why Attorney Kerns never answered inquires nor did he picked up Fed Ex package sent to him containing the pleadings before the Court and their attempt to avoid New York as the proper venue, Under the circumstances, the Court should employ its reasoning in the need to file the California Action to the exploits of Dickens's character, Jack Dawkins, the Artful Dodger.

Plaintiffs' Memorandum Response to Defendants' FRCP 12(b)(2) & (5) Motion and in Support of Cross-Motions.

**Page 7 of 18**

Time Limit for Service. If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff— must dismiss the action without prejudice against that defendant or order that service be made within a specified time. *But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.* Fed. R. Civ. P. 4(m). (Emphasis added.)

Of note, applying Local Rule 6, as the matter presents itself, even after the time has expired a court **must order** that service is to be performed within a specified period for good cause.  At the very least the Agreement coupled with Court's stay time remains under the Rule to perfect service, each are factors which present good cause for enlarging Plaintiffs' time to serve.  Fed. R. Civ. P. 4(m).

### 3.    The Court Granted a Stay, Plaintiff have Until at least October 13, 2023, to Serve.

Defendant Moyer has and is intentionally avoiding service. He admits so by his Declaration. Incredibly,  Moyer states he would never permit his attorneys to accept service of process on his behalf, and that despite the dates indicated in the non-service reports 11/7/2022, 11/19/2022, 11/21/2022, and 11/22/2023,  he had no idea that someone was trying contact him at his house to be served. (Dkt-41.2¶9.) All telling to the lack of good faith (and establishing good cause by itself) beyond his refusal to accept service is that he never mentions the multiple attempts  to serve at his office, the address listed on his website and the California Secretary of State for Service of Process on him as Agent for ADMI-CA. (Dkt-19 & 22.) Likewise, is any mention or denial of the Agreement with Attorney Kerns. Plaintiffs' Counsel has requested that Defense counsel accept service but so far, he has refused to do so or acknowledge service of any documents on Plaintiffs behalf, whether directly served by Plaintiffs' New York Counsel or California Counsel, including this Court's Order to Show Cause and the Complaint or Amended Complaint. (Dkt-32 & 48.)   On this point, Plaintiffs have now unnecessarily spent time and resources litigating and defending themselves in the California Action.  By reason of the Defendants refusal to accept service there has been unnecessary additional cost in both federal actions, the full cost of which will be addressed once the Court rules on the Defendants' motion.

Plaintiffs' Memorandum Response to Defendants' FRCP 12(b)(2) & (5) Motion and in Support of Cross-Motions.

Additionally, this Court must find that by reason of the November 2, 2023, filing of Plaintiffs' New York Action and the Court granting its Stay of the proceedings based on the December 9, 2022, Agreement among Counsel for the parties,  Plaintiffs' time to perfect service has not yet expired and their motion for an enlargement of time to perfect service is timely. (Dkt-24.)  The procedural posture-timeline of the case provides that the Plaintiffs' would still have time to serve and perfect service of their original Complaint. (Dkt-5).  Indeed, only 36 days had lapsed from the filing of Plaintiffs' Action to the stay, (November 2, 2022, to December 9, 2022) leaving 54 days to serve process.  The stay was lifted on July 28, 2023.  Defendant filed their Motion on August 27,  2023. Plaintiffs filed their Amended Complaint on September 11, 2023, the Amended Summons was issued on September 13, 2023. (Dkt-48 & 51.)  Under the circumstances, less than a full 90 days have passed for the purposes of service of process for each filed Complaint. Moreover, based on Defendants' bad faith good cause exists to enlarge Plaintiffs' time for service of process for an additional 90 days.

## Argument II.

### A. Defendants' Purposeful Activities in New York Establish Personal Jurisdiction Over Them Pursuant to New York's Longarm  Statute  C.P.L.R. 302 (a)(1).

"In a diversity case, the issue of jurisdiction is governed by the law of the forum state. *D.H. Blair Co., Inc. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006). The exercise of jurisdiction must also comport with due process. *Id.* at 165.   On a motion to dismiss, the plaintiff need only make a prima facie showing that jurisdiction exists, see *Best Van Lines, Inc. v. Walker, 490 F.3d 239, 242* (2d Cir. 2007), and because there has been no discovery in this case, Plaintiff also "need only make `legally sufficient allegations of jurisdiction' through its pleading[s] and affidavits in order to survive a motion to dismiss." *Trceline Inv. Partners, LP v. Koren*, No. 07 Civ. 1964, 2007 WL 1933860, at *2 (S.D.N.Y. July 3, 2007) (quoting *In re Magnetic Audiotape Antitrust Litig.,* 334 F.3d 204, 206 (2d Cir. 2003) (per curiam)).

Plaintiffs' Memorandum Response to Defendants' FRCP 12(b)(2) & (5) Motion and in Support of Cross-Motions.

**Page 9 of 18**

1. **Long-arm Jurisdiction Exits Over the Defendants Pursuant to N.Y. C.P.L.R. 302(a)(1).**

In New York, CPLR § 302(a) provides the statutory basis for "specific jurisdiction over a non-domiciliary defendant arising out of particular acts." *Reich*, 38 F. Supp. 3d at 457 (internal quotation marks omitted), allowing  a court to exercise personal jurisdiction over a non-domiciliary who, in person or through an agent, "transacts any business" *within* the State, provided that the cause of action arises out of the transaction of business (*Lebel v Tello*, 272 AD2d 103, 707 NYS2d 426 [1st Dept 2000]) or where a non-domiciliary committed a tortious act within the state.  Thus, to determine the existence of jurisdiction under section 302(a)(1), a court must first decide (1) whether the defendant "transacts any business" in New York and, if so, (2) whether this cause of action "aris[es] from" such business transaction (*see Best Van Lines, Inc. v Walker*, *Id*, *citing Deutsche Bank Securities, Inc. v Montana Board of Investments,* 7 NY3d 65 [2006]; *Kreutter v McFadden Oil Corp*., 71 NY2d 460, 467, 527 NYS2d 195 [1988]).

When applying the first part of the test, courts look to "the totality of the defendant's activities within the forum" (*Deutsche Bank,* 7 NY3d 65; *Sterling Nat'l Bank & Trust Co. of NY v Fidelity Mortgage Investors*, 510 F2d 870, 873 [2d Cir1975]), to determine whether a defendant has transacted business in such a way that it constitutes "purposeful activity," defined as "some act by which the defendant purposefully avails [themselves] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws" *(McKee Electric Co. Inc. v Rauland-Borg Corp*, 20 NY2d 377, 382 [1967], *quoting Hanson v Denckla*, 357 US 235, 253 [1958]; *accord Fischbarg v Doucet*, 9 NY3d 375, 380 [2007]). Turning to the second part of the test, "[a] suit will be deemed to *have arisen out* of a party's activities in New York if there is an articulable nexus, or a substantial relationship,

Plaintiffs' Memorandum Response to Defendants' FRCP 12(b)(2) & (5) Motion and in Support of Cross-Motions.

**Page 10 of 18**

between the claim asserted and the actions that occurred in New York" (*Deutsche Bank; Henderson v INS*, 157 F3d 106, 123 [2d Cir1998][internal quotation marks omitted]).

Putting aside the lack of proper service argument, the Defendants' claim, New York does not have personal jurisdiction  over them because, as best one could infer from the facial conflicts and errant factual recitals in their submissions: 1) the Defendants do not transact business, nor do they maintain any purposeful activity in New York; 2) that the last time they had business contacts related to the state of New York was approximately 10 years ago. (Dkt-41.2¶4.); 3) that Plaintiff Cellura and his companies are impersonating Moyer and ADMI Incorporated in the State of New York, among other places. (Dkt-41.2 ¶¶13.); 4) that none of the allegations in his complaint have anything to do with New York. (Dkt-41.2 ¶¶14.)

Although the Defendant Moyer's declaration denies having a business relationship (transacting business) in New York, their California Action claims otherwise and establishing the provisions of CPLR 302(a)(1) granting this Court authority over the Defendants. (Dkt-27.2¶18.) The California Action expressly pleads that Defendant Moyer contacted ABG where his communication concerned a direct nexus to the Plaintiffs' New York  Action, that Plaintiffs impersonated him to obtain the ABG Agreement where the intended beneficiaries were Defendant Moyer and ADMI-CA-ABG; not plaintiffs-ADMI-NV.  Plaintiffs claim that contact with ABG in New York was an act of fraud  which was directed at and intended to interfere in their Agreement with ABG and other prospective partners to that Agreement.

The  California Action provides express allegations, that "[a]fter  [Defendant Moyer and ADMI-CA] missed out on the agreement with Authentic Brands, [Defendant Moyer] contacted Authentic Brands and inquired why Authentic Brands chose to enter into an agreement with [ADMI-NV].  In response, Authentic Brands indicated confusion and told [Defendant Moyer] that Authentic

Plaintiffs' Memorandum Response to Defendants' FRCP 12(b)(2) & (5) Motion and in Support of Cross-Motions.

Page 11 of 18

Brands believed to have entered an agreement with [Defendant Moyer and ADMI-CA]. Authentic Brands entered into the agreement with [ADMI-NV] based upon confusion caused by [ADMI-NV's] misleading and deceptive impersonation of [Moyer and ADMI-CA]. Authentic Brands was especially vulnerable to such deception because of its **prior business relationship with [Moyer and ADMI-CA]."** (Emphasis added.) Dkt-27.2¶18.)

"It is well-settled that CPLR 302(a)(1) is a 'single-act' statute, meaning that 'proof of one transaction in New York is sufficient to invoke jurisdiction [under 302(a)(1)], even though the defendant never enter[ed] New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted.'" *Salomon Smith Barney, Inc. v. McDonnell*, 201 F.R.D. 297, 303 (S.D.N.Y) quoting *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1109 (2d Cir.1997), in turn citing *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467, 527 N.Y.S.2d 195, 522 N.E.2d 40 (1988)).

Although not necessarily a single act transaction due to multiple unlawful acts of conspiracy fraud and extortion directed at ADMI-NV in New York, (Exhibit's "D"-"H".), even if it were a single act, it not only affects the ABG Agreement with ADMI-NV but directly interfered with the proposed partnership between ADMI-NV and Maharaj. (Dkt-48¶76-98 & Cellura Decl. ¶¶18-27.)

Plaintiffs' claims that the Defendants acts are tied, and constitute a direct nexus to their stated business activities and prove that the Defendant Moyer's Declaration is untrue on its face; falsely claiming that he has not engaged in business activities in New York for over 10 years; proven so and confirmed by his website[6] and an email he sent to Cellura on February

---

[6] Moyer's website expressly offers his services worldwide. (**http://www.admii.com**) Moyer claimed to Cellura he was hired to update and build out the Apple Store In 2019-2020. (Cellura Decl. ¶11.) The statement like most of Moyer's claims that he has not engaged in business in New York for over 10

Plaintiffs' Memorandum Response to Defendants' FRCP 12(b)(2) & (5) Motion and in Support of Cross-Motions.

Page 12 of 18

13, 2021, requesting and Cellura's providing an introduction to ABG executives in New York. (Dkt-27.2¶18; Cellura Decl. ¶19-20; Exhibits "B & C".)  Noteworthy, the February 2021, introduction  can only mean that any claimed business relationship with ABG occurred after February 2021, and is in opposition to the claim there was no business activity for the period 10 years before Plaintiffs' filed their New York Action. (Dkt-27.2¶18.) Clearly,  Defendants had no prior relationship with ABG and were claiming a right to the May 2021, Agreement Plaintiffs had with ABG.  If  it were, otherwise, Defendant Moyer  would not have needed an introduction.

The proof is that the Defendants have created a false claim in California related to purposeful activity concerning the ADMI-NV-ABG Agreement, contacting ABG in New York and claiming their rights were lost as the  intended beneficiary of the Agreement; and that they were harmed; sending emails and letters to Plaintiffs unlawfully demanding money and securities, conspiring  to coercion, and extortion Plaintiffs and others who would benefit from  contracting  with  Plaintiffs.   (Cellura  Decl.  Exhibit  "D"-"H".)  The  Defendants' unlawful-unjustified  acts  purposefully  interfered  in  Plaintiffs'  New  York  business opportunities. (Cellura Decl. *Passim.*)

Although the extent and manner of communication with ABG is not yet clear, the fact that the transaction occurred by telephone calls, facsimile transmission of documents, and the delivery of documents into New York but without the physical presence of the Defendant is of no moment.  "New York law has moved away from the requirement of having a physical meeting in order to exercise jurisdiction." *DLJ Mortgage*, 2007 WL 4325893, at *4, fn. 10 (citing *Fischbarg v. Doucet,* 38 A.D.3d 270 (N.Y. App. Div. 1st Dep't 2007) "Courts will

---

years is untrue.  He claims a business relationship with ABG which must have occurred after 2021 and involve the core right to the ABG Agreement. (Dkt-27.2 ¶18, Cellura Decl. *Passim.*)

Plaintiffs' Memorandum Response to Defendants' FRCP 12(b)(2) & (5) Motion and in Support of Cross-Motions.

sustain jurisdiction based solely on telephone calls and facsimile communications in cases where the communication clearly shows that the defendant intended to project itself into New York commerce." *Serio v. Surge Resources, Inc.,* 2006 WL 559460, at *4 (S.D.N.Y. March 7, 2006).   There can be little doubt this was Defendants' purpose and intent.

The admission set forth in the California Action establish a business relationship among Defendants and ABG concerning Plaintiff's New York contract and their claim of  intended rights to the ABG Agreement  easily satisfy the first prong of the § 301(a)(1) inquiry. (Dkt-27.2¶18.)   Their  acts of contacting ABG to further their fraud falsely claiming a right to the benefits of the Agreement  and the accompanying misrepresentation, is the nexus for a claim a conspiracy to extortion and constitutes the Defendants' purposeful activities in New York. (Dkt-48¶¶110-128, Cellura Decl. *Passim*; Exhibits "B'-"H".)

There can be little doubt, these acts give rise to the core claims in this action, thus satisfying the second prong of the § 301(a)(1) inquiry. *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC,* 450 F.3d 100, 103 (2d Cir. 2006) (A claim "arises from" a transaction when there is "some articulable nexus between the business transacted and the cause of action sued upon, or when there is a substantial relationship between the transaction and the claim asserted.")(citation omitted).  Both principles are satisfied in this case.

In short, by their own admissions, Defendants have reached into the forum state, New York, interfering with Plaintiffs' business activities, admitting to transacting business in New York involving claims core to the Plaintiffs' New York Action a business relationship with ABG concerning a falsely disputed matter, rights under the branded license Agreement subject to New York law and the Plaintiffs' rights where the damages suffered are fixed in New York having a direct nexus to the Defendant unlawful activity.  (Cellura Decl. *Passim*.)

Plaintiffs' Memorandum Response to Defendants' FRCP 12(b)(2) & (5) Motion and in Support of Cross-Motions.

Page 14 of 18

### 2.   Defendants' Acts Constitute Minimum Contacts and Satisfy Due Process.

"Due process permits a court to exercise personal jurisdiction over a non-resident where the maintenance of the suit would not offend traditional notions of fair play and substantial justice." *Porina v. Marward Shipping Co., Ltd.*, 521 F.3d 122, 127 (2d Cir. 2008) (internal quotations and citation omitted).  "Once the Court is satisfied there are sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction. . . . [the Court must] proceed to the second stage of the due process inquiry,  and consider whether the assertion of personal jurisdiction is reasonable under the circumstances of the particular case." *Id.* (internal quotations and citations omitted).

When a defendant purposely places the issue  "between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business [and] . . . it is presumptively not unreasonable to require him to submit to the burdens of litigating in that forum as well*." Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985).  Under the facts as alleged and supported by the record thus far, the Court should find that under the totality of the circumstances Defendants' claim of entitlement to Plaintiffs' New York Agreement with ABG, claiming a damages by reason of their false impersonation in New York, and Plaintiffs' claim the Defendants have interfered in their rights under the Agreement, due process is satisfied and the exercise of personal jurisdiction over Defendants is reasonable. *Serio*, 2006 WL 559460, at *4.

Cleary, Defendant Moyer could foresee his acts having consequences in New York. He intended them too, specifically claiming rights under the ADMI-NV and ABG Agreement, thus establishing minimum contacts with the forum state, and making the Defendants subject to New York's long arm jurisdiction pursuant to CPLR 302(a)(1), for their tortious acts.

Notwithstanding the clear fact that the Defendants' claims are far-fetched; that ABG thought it had entered the Agreement with ADMI-NV and not Defendant Moyer and ADMI-CA

Plaintiffs' Memorandum Response to Defendants' FRCP 12(b)(2) & (5) Motion and in Support of Cross-Motions.

**Page 15 of 18**

based upon "confusion" caused by the Plaintiffs' misleading and deceptive impersonation claiming that ABG was especially vulnerable to such deception because of its **prior business relationship** with Defendants, the claim itself places the entire Agreement and the rights of the parties at issue under New York law for jurisdiction purposes satisfying the second prong of the test for due process.

3.  **Plaintiffs are Entitled to an Order Granting Discovery to Avoid Injustice.**

Plaintiffs have met their burden of proof under either standard of a prima facia case; *Best Van Lines, Inc. v. Walker, 490 F.3d 239, 242* (2d Cir. 2007) or simply legally sufficient allegations of jurisdiction; *Trceline Inv. Partners, LP v. Koren*, No. 07 Civ. 1964, 2007 WL 1933860, at *2 (S.D.N.Y. July 3, 2007). Under the competing facts claimed, although there can be little doubt of Defendants purposeful activity in New York, Plaintiffs are entitled to disclosure on the issue of personal jurisdiction. A determination at this stage of the proceeding that personal jurisdiction is lacking over the Defendants pursuant to CPLR 302(a)(1) would be premature, considering Plaintiffs' showing that facts and exhibits exists in contradiction to the Defendants present claims essential to justify a ruling on their Motion. If the Court is unsure of its power-jurisdiction over the Defendants, a determination of it should be made only after discovery (*Sony Music Entertainment Inc. v Does 1-40*, 326 FSupp2d 556 [SDNY 2004][the court has discretion to allow discovery to determine the basis for personal jurisdiction], *citing Volkart Bros., Inc. v M/V Palm Trader*, 130 FRD 285, 290 [SDNY 1990]).

4.  **The First to file Rule is Controlling not the First to Serve.**

The Defendants not only violated their Agreement, but as argued in Plaintiffs' Memorandum of Law in support of enjoining the California Action, the Action is nothing more than a compulsory counterclaim to the New York action, thus allowing this Court to enjoin Defendants from prosecuting the California Action pursuant to Fed. R. Civ. P. 13(a) and requiring them to file an answer before this Court. (Dkt-27 Pg 7¶1.)

Plaintiffs' Memorandum Response to Defendants' FRCP 12(b)(2) & (5) Motion and in Support of Cross-Motions.

**Page 16 of 18**

Indeed, there is a presumption that because Plaintiff's case was filed earlier it takes priority. *See, e.g., Employers Ins. of Wausau v. Fox Entertainment Group, Inc.*, 522 F.3d 271, 274 (2d Cir. 2008). Under the "first-filed" rule, "[w]here there are two competing lawsuits, the first suit should have priority." *New York Marine and General Ins. Co. v. LaFarge North America, Inc*., 599 F.3d 102, 112 (2d Cir. 2010) (quoting *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006. *See also Ontel Products, Inc. v. Project Strategies Corp*., 899 F. Supp. 1144, 1150 (S.D.N.Y. 1995) ("Where lawsuits concerning the same parties and issues are pending in two federal districts, the first-filed rule of the Second Circuit generally affords priority to the first-filed suit when courts choose which suit to permit to go forward." [citing *First City Nat'l Bank & Trust v. Simmons*, Page  878 F.2d 76, 79 (2d Cir. 1989); *Meeropol v. Nizer*, 505 F.2d 232, 235 (2d Cir. 1974); *Employers Ins. of Wausau v. Fox Entertainment Group, Inc*., 522 F.3d 271, 274-75 (2d Cir. 2008). The operative date  in applying this rule is the date of filing, and not service. **(Dkt-5.)** In this case the filing occurred long before the California Action was filed. See, e.g., *Schnabel v. Ramsey Quantitative Systems, Inc.,* 322 F. Supp.2d 505, 511 (S.D.N.Y. 2004).

### 5. New York is the Proper Venue.

Finally, although presented in Plaintiffs' Motion to Enjoin, the Defendants have not satisfied their burden under 28 U.S.C. § 1404(a) by showing that transfer of their California action is not warranted "for the convenience of the parties and witnesses, in the interest of justice." District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis. *In re Cuyahoga Equip. Corp*., 980 F.2d 110, 117 (2d Cir. 1992). Some of the factors a district court is to consider are, inter alia: "(1) the  plaintiffs choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the

Plaintiffs' Memorandum Response to Defendants' FRCP 12(b)(2) & (5) Motion and in Support of Cross-Motions.

**Page 17 of 18**

convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties." *Albert Fadem Trust v. Duke Energy Corp.*, 214 F.Supp.2d 341, 343 (S.D.N.Y. 2002).

Applying these factors, Plaintiffs have met their burden as claimed establishing venue is proper in New York. (Dkt-27.)  This Court should hold the Plaintiffs, a New York  headquartered company chose New York as its forum, their decision is given great weight as a determining factor in enjoining a second action. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). Second, New York is a convenient forum for all the witnesses who are in New York.  Likewise, all the  documents and other evidence regarding the claims are available in New York.

## Conclusion.

This case is a prime example of the gamesmanship the Second Circuit has rejected in any attempt to avoid service and venue.  The Circuit's  holdings are on point with the power of this Court to avoid the Defendants' conduct and attempt to usurp  the power of this Court to assert personal jurisdiction over them.   It is the first to file rule that is controlling in this case, not service, especially on the facts and law before the Court proving personal jurisdiction was avoided causing unnecessary cost and delay in these proceedings.

Dated: September 25, 2023

*Douglas R. Dollinger, Esq.*
Douglas R. Dollinger, Esq., 5922
Law Offices of Douglas R. Dollinger, PC
570 County Rt 49
Middletown, New York 10940
Phone | 845.741.9363
Email ddollingeresq@gmial.com
Attorney for Plaintiffs

Plaintiffs' Memorandum Response to Defendants' FRCP 12(b)(2) & (5) Motion and in Support of Cross-Motions.

Page 18 of 18